[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 268 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 269 
As the circuit judge before whom this cause was tried, did not permit the plaintiffs to recover upon the certificates of the notary and the notices of protest attached to the same, but compelled them to give farther proof, it is not necessary to notice them farther than to observe that they were void, as the presentment was not made by him but by his clerk. This power can not be delegated to a third person, as is settled in the case of the Onondaga County Bank v. Bate (3 Hill, 53). But it is not necessary that a notary should be employed to make the presentment or to give the notice of protest. A demand of payment by an agent having a parol authority, or the mere possession of the paper is sufficient (7 Mass. 486; 9 id. 423 and 427;Bank of Utica v. Smith, 18 Johns. 240). Notice of nonpayment may be given by a notary or any person authorized for that purpose (18 John. 230). In regard to the first note the evidence shows that one A.L. Gomedre who was a clerk in the office of the notary public, made the demand of payment mentioned in the certificate of protest. The certificate which was given in evidence, states that on the 3d day of May, 1844 (the day the note fell due), the note was presented to the drawer for payment, who said that he could not pay the same. *Page 270 
The witness on his cross-examination testified that he did not personally know the maker of the note; that he went to the place designated in pencil at the bottom of the note and there saw a person who said he was Jacob Ferdon. The note is signed Jacob Ferdon, 194 Clinton street. No objection was made by the defendant that the demand was not made at 194 Clinton street, that appearing to have been taken for granted by both parties at the trial, but the defendant objected to the reception of the evidence that the person inquired of by the witness said he was Jacob Ferdon. The witness farther testified that the place he went to had a sign up with that name on it, and it was a tailor's shop. This was clearly a good demand of the note. It was made on the day the note fell due at the place the drawer had designated as his place of business and of the drawer himself, if his answer to the inquiry is to be received as evidence, and to this I see no objection. In inquiries in order to ascertain the identity of the drawer, the inquirer has to be guided in his researches by the answer of the individual addressed, and these answers should be received in the first instance as a part of the res gesta to make out the demand. There is no danger of any imposition being practiced upon an endorser, or any hardship to him consequent upon the adoption of such a rule. He is not a stranger to the drawer, and when sued as his endorser, he has but to ascertain from him whether a demand has been made, and if not, he can produce him as a witness to show that none has been made. If (as the witness swears) he made the demand of payment specified in the certificate, then he must have had possession of the note at the time, for the certificate specifies "that the note was presented for payment to the drawer thereof." It also shows a refusal to pay the note. In the absence of any proof to rebut this evidence, it was sufficient to show a demand of the drawer and his refusal to pay.
With regard to the service of notice of protest upon the endorser, it was shown by the evidence of another clerk in the office of the notary that on the 4th day of May, 1844, he looked into the directory of the city to ascertain the residence of the *Page 271 
defendant, but could not find his name there. That he inquired of the holders of the note where he was to be found, and was told by them they did not know, and referred him to the Mechanics' and Traders' Bank in Grand street That he inquired at the bank and the officers could not tell him where the defendant resided or transacted business and referred him to one Briggs. That he called on Briggs and he could not tell the defendant's residence or place of business, or give any information of any body that could tell. That being unable to obtain any information on the subject, either as to defendant's abode or place of business, he put a notice of protest of the note in the New York post office, directed to Garret M. Maybee, New York. There is an endorsement of the payment of $101.25 on this note on the 6th day of May, 1844. The bookkeeper of the plaintiffs testified that about the time of the date of this payment, defendant came to plaintiff's store to endorse a note for the balance left due after the endorsement, in renewal of this note. That he showed the defendant the note with the protest attached to it, and that defendant offered to endorse a new note for the balance due on the old one, but in consequence of a new note having been drawn up including $30 or $40 of a bill of goods subsequently purchased by Ferdon, he refused to endorse it. Defendant said he came there at the request of Ferdon to endorse a note in renewal of the first. Was this due notice of the dishonor of the note in question to the defendant? Conceding that the defendant resided in the city of New York, the notice sent through the post office was not good (The Cayuga County Bank v. Bennett and others, 5Hill, 236; Rawson v. Mack, 2 Hill, 587). It is not contended by the plaintiffs' counsel that if a notice of protest was necessary, this would be sufficient, but he insists that the evidence shows reasonable though unsuccessful diligence to ascertain the residence or place of business of the defendant, and that this dispensed with notice. It is well settled that where the endorser has no place of residence which the reasonable diligence of the holder can enable him to discover, the law dispenses with giving regular notice (Bank of Utica v.Bender, 21 Wend. 643; Lowry *Page 272 
v. Scott, 24 Wend. 358; Chitty on Bills, 286). In this case the endorser did not, as the drawer did, put the number of his residence or place of business to his signature, so that the person endeavoring to serve notice upon him might know where he might be found. The person who sought to give him notice first looked into the directory and could not ascertain by that either his place of business or residence. The holders of the note directed him to make inquiries at the bank, which he did, and was equally unsuccessful there, as was he also at Mr. Brigg's, to whom they referred him, and he says he could not find any one who could inform him. Were there no other facts in the case, I think this was reasonable diligence and dispensed with giving regular notice to the defendant. But the testimony of the plaintiffs' bookkeeper shows that about the 6th of May, 1844, two days after the notice was sent through the post office, he had notice of it, and offered to endorse a new note for the balance due on this note.
In regard to the second note, it is not necessary to repeat what has been said in reference to the demand of payment as it was made by the same person and in the same manner that the demand of the first note was made. The only question remaining is, was the notice regularly served upon the defendant? The witness swore that he made inquiries and was informed that defendant's office was near the dry dock. That he went there and found his name on a sign over the door of an office and inquired of a clerk in it if it was Garret M. Maybee's office, and he said it was, and that he left the notice of protest for defendant with his clerk. That he did not know of his own knowledge that it was defendant's office. This uncontradicted was sufficient service of the notice, and called upon the defendant to show that the place where it was served was not his place of business. There was no dispute about the facts in regard to this or the first note, either as to the question of diligence in ascertaining the residence or place of business of the defendant, or the notice of nonpayment to the endorser. In such a case the judge was right in treating it as a question of law and refusing to charge as requested by the defendant (Bank of *Page 273 Utica v. Bender, 21 Wend. 643; 23 Wend. 620; 2 Hill,
588; 3 Wend. 75). If I am wrong as regards the first note, the defendant can not avail himself under a general exception made by him as to the refusal to charge and the charge itself, as his second request in regard to the first note and nearly all in reference to the second were clearly wrong.