Richard H. McCarty, Respondent, v. Natural Carbonic Gas Company, Appellant.

1. Nuisance — Reasonable Use. The law relating to private nuisances is a law of degree and turns on the question of fact whether the use is reasonable or not under all the circumstances. No hard and fast rule controls the subject, for a use that is reasonable under one set of facts would be unreasonable under another. Whether the use of property to carry on a lawful business, which creates smoke or noxious gases in excessive quantities, amounts to a nuisance depends on the facts of each particular case. Location, priority of occupation and the fact that the injury is only occasional are not conclusive, but are to be considered in connection with all the evidence and the inference drawn from all the facts proved whether the controlling fact exists that the use is unreasonable. If that fact is found, a nuisance is established and the sufferer is entitled to relief in some form. Unless that fact is found, or it is an inference of law from other facts found, no nuisance is established, even if he shows that he has suffered some damage, annoyance and injury. Those evils are at times incidental to civilized life and he finds compensation in the arts and agencies of civilized society. What is reasonable is sometimes a question of law and at others a question of fact. When it depends upon an inference, from peculiar, numerous or complicated circumstances it is usually a question of fact. Whether the use of property by one person is reasonable, with reference to the comfortable enjoyment of his own property by another, generally depends upon many and varied facts; such as location, nature of the use, character of the neighborhood, extent and frequency of the injury, the effect on the enjoyment of life, health and property and the like.

2. Use of Soft Coal in Factory Situated in Country District Suitable for Country Homes. In a country district suitable for country homes, the use of soft coal in a factory so situated that thick black smoke therefrom, great in volume and dense in quality, envelopes

and discolors a neighboring dwelling house, causing much discomfort and some financial loss to the occupants, constitutes a nuisance when such use of soft coal is not necessary for the practical running of the plant and is not a reasonable use of the manufacturing property, which in this case was a question of fact.

3. MODIFICATION OF JUDGMENT RESTRAINING USE AS BEING TOO BROAD IN ITS TERMS. A judgment, however, permanently restraining the burning of soft coal in the factory is too broad, being unlimited as to time and circumstances and should be modified. By the use of some known appliance or one which might become known, the defendant might be able to burn soft coal without injury to the plaintiff and it cannot lawfully be deprived of that right.

*McCarty* v. *Natural Carbonic Gas Co.*, 114 App. Div. 908, modified.

(Argued May 7, 1907; decided June 4, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 2, 1906, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry T. Fay* for appellant. In cases of private nuisance the primary question is not the injury, if any, to the plaintiff, but the right of the defendant to use its own property in the way it is doing; and there is no liability on its part for injuries arising from a proper use of its own property. (*People* v. *Cunningham*, 1 Den. 524; *Harlow* v. *Humiston*, 6 Cow. 189; *Dygert* v. *Schenck*, 23 Wend. 449; *Bellows* v. *Sackett*, 15 Barb. 96; *Clark* v. *Foote*, 8 Johns. 421; *Stuart* v. *Hawley*, 22 Barb. 619; *Panton* v. *Holland*, 17 Johns. 92; *Platt* v. *Johnson*, 15 Johns. 213; *Lasala* v. *Holbrook*, 4 Paige, 169; *Myers* v. *Gemmel*, 10 Barb. 357.) The rights of adjoining landowners are mutual, equal and reciprocal, and each must submit to that damage which is the necessary consequence of a proper use by another of his own property. (*Platt* v. *Johnson*, 15 Johns. 213; *Lasala* v. *Holbrook*, 4 Paige, 169; *Losee* v. *Buchanan*, 51 N. Y. 476; *Cogswell* v. *R. R. Co.*,

103 N. Y. 10; *Booth* v. *R. R. Co.*, 140 N. Y. 267; *Hay* v. *Cohoes Co.*, 2 N. Y. 159.) In all cases that are strictly cases of private nuisance, involving the conflicting rights of adjacent property owners, the test of the proper and permissible use by the defendant of its own property is solely and entirely the question of negligence. (*Dygert* v. *Schenck*, 23 Wend. 446; *Panton* v. *Holland*, 17 Johns. 92; *Brown* v. *R. R. Co.*, 12 N. Y. 486; *Austin* v. *R. R. Co.*, 25 N. Y. 334; *Losee* v. *Buchanan*, 51 N. Y. 476; *Dunsbach* v. *Hollister*, 49 Hun, 352; 132 N. Y. 602; *Hay* v. *Cohoes*, 2 N. Y. 159; *Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Heeg* v. *Licht*, 80 N. Y. 579; *Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18.) The injury to the plaintiff must be material and substantial to entitle him to recover. (*Williams* v. *R. R. Co.*, 18 Barb. 222; *Butterfield* v. *Klaber*, 52 How. Pr. 255; *Gilford* v. *Babies' Hospital*, 1 N. Y. Supp. 448; *Stilwell* v. *B. R. Academy*, 4 N. Y. Supp. 414; *Pettit* v. *R. R. Co.*, 80 Hun, 86; *McGuire* v. *Bloomingdale*, 8 Misc. Rep. 478; *Flinn* v. *R. R. Co.*, 142 N. Y. 11; *Bowden* v. *Edison Co.*, 29 Misc. Rep. 171; *Riedman* v. *M. M., etc., Co.*, 56 App. Div. 23; *Friedman* v. *R. R. Co.*, 89 App. Div. 38; 180 N. Y. 550.) To warrant a recovery on the part of the plaintiff it must appear that the injury which will thereby be done to the defendant will not be out of due proportion to the benefit to the plaintiff. (*Bentley* v. *Cement Co.*, 48 Misc. Rep. 457.) The use being made by the defendant of its own property is a reasonable, proper and lawful use only, and it is not responsible in any way to the plaintiff for the injury, if any, which has been occasioned by such use. (*Flinn* v. *R. R. Co.*, 142 N. Y. 11; *Farrell* v *N. Y. S. Co.*, 23 Misc. Rep. 726; *Riedman* v. *M. M., etc., Co.*, 56 App. Div. 23; *Tucker* v. *Mack*, 61 App. Div. 521; *R. L. Co.* v. *S. S. Co.*, 62 App. Div. 421; *Friedman* v. *R. R. Co.*, 89 App. Div. 38; 180 N. Y. 550; *A. I. Co.* v. *C. C. Co.*, 43 Misc. Rep. 221; *Benner* v. *A. D. Co.*, 134 N. Y. 156; *Pritchard* v. *Edison Co.*, 92 App. Div. 178; 179 N. Y. 364; *Pettit* v. *R. R. Co.*, 80 Hun, 86; *Doellner* v. *Tynan*, 38

How. Pr. 176.)   The defendant, being engaged in making only a proper, lawful and reasonable use of its own property, has an absolute property right to continue that use, as it is doing, and cannot be compelled to desist therefrom merely to obviate an injury to another.   (*Booth* v. *R. R. Co.*, 140 N. Y. 267; *Moon* v. *N. W. P. Co.*, 31 Misc. Rep. 631; *Williams* v. *R. R. Co.*, 18 Barb. 222; *Hentz* v. *R. R. Co.*, 13 Barb. 646; *Doellner* v. *Tynan*, 38 How. Pr. 176; *Pettit* v. *R. R. Co.*, 80 Hun, 86; *Farrell* v. *N. Y. S. Co.*, 23 Misc. Rep. 726; *Flinn* v. *R. R. Co.*, 142 N. Y. 11; *Riedman* v. *M. M., etc., Co.*, 56 App. Div. 23; *Tucker* v. *M. P. Co.*, 61 App. Div. 521; *R. L. Co.* v. *S. S. Co.*, 62 App. Div. 421; *Friedman* v. *R. R. Co.*, 89 App. Div. 38; 180 N. Y. 550.)   The plaintiff is not entitled to relief, either by way of injunction or in damages. (*Smith* v. *Ingersoll*, 12 Misc. Rep. 5; *Pritchard* v. *Edison*, 179 N. Y. 364; *Butterfield* v. *Klaber*, 52 How. Pr. 255.)

*George R. Salisbury* for respondent.   The word "negligence" as used by the courts in nuisance actions is defined to be a violation of relative obligation of duty.   (*Dunsbach* v. *Hollister*, 49 Hun, 352; *Wilmont* v. *Bell*, 76 App. Div. 252; *Booth* v. *R., W. & O. T. R. R. Co.*, 140 N. Y. 267.) It was an invasion of the legal rights of the plaintiff by the defendant if defendant permitted the smoke, soot and dust from its chimneys to come into and upon the lands of plaintiff, provided such smoke, soot and dust interfered with the reasonable and comfortable enjoyment by plaintiff of his property or caused material injury to the property itself, and if defendant could with reasonable care and without unreasonable effort or expense avoid it.   And the business of the defendant thus conducted was and is a nuisance.   (3 Black. Comm. 215; Wood on Nuisance, 471, 491; *Bohn* v. *P. J. G. L. Co.*, 122 N. Y. 18; *Catlin* v. *Valentine*, 9 Paige, 574; *Campbell* v. *Seamen*, 63 N. Y. 568; *Rosenheimer* v. *S. G. L. Co.*, 39 App. Div. 482; *Rosenheimer* v. *S. G. L. Co.*, 36 App. Div. 1; *Bier* v. *Cook*, 37 Hun, 38; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Pach* v. *Geofroy*, 67 Hun, 401;

*Kearney* v. *M. Co.*, 14 N. Y. S. R. 854; *Mulligan* v. *Elias*, 12 Abb. [N. S.] 259.) Whether the burning of soft coal under the circumstances is a nuisance, is a fact, and this fact having been established, this court will not disturb the finding. (*Booth* v. *R.*, *W. & O. T. R. R. Co.*, 140 N. Y. 267; *Mulligan* v. *Elias*, 12 Abb. [N. S.] 259; *Rosenheimer* v. *S. G. L. Co.*, 39 App. Div. 482; *Catlin* v. *Valentine*, 9 Paige, 574.)

Vann, J. This action was brought to restrain the defendant from so operating its manufactory as to cause smoke, soot and dust emitted from its chimneys to gather and settle about the dwelling house of the plaintiff to his annoyance and injury.

The trial court found the following facts in substance : For four years prior to the 13th of July, 1904, when this action was commenced, the plaintiff owned certain premises on South Broadway in the village of Saratoga Springs, consisting of a lot of land with a frame dwelling house thereon, known as the "Anna Therese." Said house is situated in a country district suitable for country homes, "although not as yet so appropriated by others than the plaintiff." The defendant is a foreign corporation engaged in the manufacture of carbonic acid gas in a semi-fluid form convenient for shipment to market by compressing the natural gas found on its premises, and for this purpose it maintains a plant containing machinery operated by steam, which is generated from two boilers with a capacity of 100 horse power. It has two smokestacks, each 90 feet high, situated 840 feet from the residence of the plaintiff. From two and one-half to four tons of soft coal are used daily by the defendant and its chimneys continuously pour forth "a thick black smoke, large in volume and larger, denser and thicker when the fires are freshened twice" every hour during the twenty-four that the plant is in operation, Sundays excepted.

When the wind is right the smoke blows down upon the plaintiff's house and comes upon and around it. When the atmos-

phere is dense " clouds of smoke proceeding from the defendant's chimneys gather and settle about the plaintiff's house, enveloping it and sometimes obscuring it from view." Said smoke " has caused the exterior of the house of the plaintiff to become discolored with soot and has caused plaintiff and his family much discomfort and annoyance and some financial injury." The defendant causes this damage and injury by the use of soft coal, yet by the use of anthracite coal it would obtain the same result in manufacturing although at a greater expense, and if the use of soft coal were abandoned the discomfort experienced by the plaintiff would be entirely avoided. " The present use of soft coal is not a necessary use for the practical management and running of its plant " · and " under all the circumstances of the case the present discomfort of the plaintiff is not occasioned by any reasonable use by the defendant of its own property." The plaintiff had owned his property for several years before the defendant erected its factory. Another factory like the defendant's was located in the neighborhood before the plaintiff purchased, but as it uses anthracite coal it has never caused any annoyance. The rental value of the plaintiff's house has been injured by the use of soft coal by the defendant to the extent of $800, and he has incurred expense for cleaning rugs to the extent of $18 more.

The court, after repeating as conclusions of law its findings of fact in relation to reasonable and necessary use, further found as conclusions of law that " the defendant should be enjoined, restrained and forbidden from burning soft coal on its said plant in the village of Saratoga Springs, New York, for the purpose of generating steam," and that " the plaintiff herein is entitled to the sum of $818.00 damages and is also entitled to the costs of the action." Upon appeal to the Appellate Division the judgment was modified by deducting from the damages awarded the sum of $18.00 as of the date when the judgment was entered, and, as so modified, the judgment was unanimously affirmed.

The action of the courts below withdraws the evidence

from our view, except for the consideration of exceptions relating thereto, and leaves but one question upon the merits for us to decide and that is whether the facts found support the conclusions of law ? In other words, in a country district suitable for country homes, does the use of soft coal in a factory so situated that thick, black smoke therefrom, great in volume and dense in quality, envelopes and discolors a neighboring dwelling house, causing much discomfort and some financial loss to the occupants, constitute a nuisance, when such use of soft coal is not necessary for the practical running of the plant and is not a reasonable use of the manufacturer's property ?

The principles governing the decision of that question are neither recent in origin nor doubtful in application. The ancient maxim of *sic utere tuo ut alienum non lædas* is the foundation of the well-established rule that no one may make an unreasonable use of his own premises to the material injury of his neighbor's premises, and if he does the latter has a right of action even if he is not driven from his dwelling, provided the enjoyment of life and property is materially lessened. (*Campbell* v. *Seaman*, 63 N. Y. 568; *Cogswell* v. *New York, New Haven & Hartford R. R. Co.*, 103 N. Y. 10; *Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18; *Morton* v. *Mayor, etc., of N. Y.*, 140 N. Y. 207; *Garvey* v. *Long Island R. R. Co.*, 159 N. Y. 323; *Bly* v. *Edison Electric Illuminating Co.*, 172 N. Y. 1; *Pritchard* v. *Edison El. Ill. Co.*, 179 N. Y. 364.)

The law relating to private nuisances is a law of degree and usually turns on the question of fact whether the use is reasonable or not under all the circumstances. No hard and fast rule controls the subject, for a use that is reasonable under one set of facts would be unreasonable under another. Whether the use of property to carry on a lawful business, which creates smoke or noxious gases in excessive quantities, amounts to a nuisance depends on the facts of each particular case. (21 Am. & Eng. Ency. of Law [2d ed.], 692.) Location, priority of occupation and the fact that the injury is only occasional

are not conclusive, but are to be considered in connection with all the evidence and the inference drawn from all the facts proved whether the controlling fact exists that the use is unreasonable. If that fact is found, a nuisance is established and the plaintiff is entitled to relief in some form. Unless that fact is found, or it is an inference of law from other facts found, no nuisance is established, even if the plaintiff shows that he has suffered some damage, annoyance and injury. Those evils are at times incidental to civilized life and the sufferer finds compensation in the arts and agencies of civilized society. (*Campbell* v. *Seaman, supra.*) What is reasonable is sometimes a question of law and at others a question of fact. When it depends upon an inference from peculiar, numerous or complicated circumstances it is usually a question of fact. Whether the use of property by one person is reasonable, with reference to the comfortable enjoyment of his own property by another, generally depends upon many and varied facts; such as location, nature of the use, character of the neighborhood, extent and frequency of the injury, the effect on the enjoyment of life, health and property and the like. Such was the nature of the question in this case which, we think, is one of fact.

The case last cited involved injury to ornamental shrubbery on land adjacent to a village, from the noxious gases of a brick factory, which dug the clay on its own premises, and the exhaustive opinion of Judge Earl holds, with the concurrence of all the judges, that articles of luxury are as much under the protection of the law as articles of necessity; that it is immaterial that the injury is only occasional; that the right to an injunction is not affected by the fact that the brick kiln was used before the plaintiff purchased his land and that if the use is such "as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient" it constitutes a nuisance.

In the well-known *Cogswell Case* (*supra*) a railroad company had erected an engine house near a dwelling house in a

city and the smoke, cinders and coal dust, carried by the winds, filled the house, injured articles therein and rendered the air offensive and the house uncomfortable. It was held that the "engine house, as used, was within every definition a nuisance, for which, as between individuals, an action would lie for damages and for which a court of equity would afford a remedy by injunction." All the judges united with Judge Andrews in saying: "However necessary it may be for the defendant that its engine house should be located where it is, this constitutes no justification for the injury suffered by the plaintiff, nor is it any answer to the action that it exercises all practicable care in its management. It may have the right, which it claims, to acquire land by purchase for the accommodation of its business, but it must secure such a location as will enable it to conduct its operations without violating the just rights of others. Public policy, indeed, requires that in adjusting the mutual relations between railroads and individuals, courts should not stand upon the assertion of extreme rights for either side, but in this case the facts leave no room for doubt that the plaintiff has suffered a substantial and unauthorized injury."

The *Bohan Case* (*supra*) involved the comfortable enjoyment of neighboring property owing to noxious odors from gas works carried on by a corporation organized under the general statute. The court charged the jury that the question for them to determine was: "Did the odor pollute the air so as to substantially render plaintiff's property unfit for comfortable enjoyment?" The jury found for the plaintiff and the court held that the act complained of constituted a nuisance *per se*. The court refused to charge "that unless the jury should find that the works of the defendant were defective, or that they were out of repair, or that the persons in charge of manufacturing gas at these works were unskillful and incapable, their verdict should be for the defendant." It further refused to charge "that if the odors which affect the plaintiff are those that are inseparable from the manufacture of gas with the most approved apparatus and with the utmost

skill and care and do not result from any defects in the works or from want of care in their management, the defendant is not liable." Both requests were refused and the exceptions to the rulings were held to raise no error. The thorough review of all the prior cases makes it unnecessary for us to mention them, and an able dissenting opinion added emphasis to the decision, for it showed that nothing had been overlooked and that no argument was left unused.

The leading authorities in all jurisdictions hold that the question is whether the defendant makes a reasonable or, as some judges express themselves, a proper use of his own property? Sometimes negligence is referred to as an element in the question. Judge Landon once pointedly said: "A lawful business negligently conducted is not a lawful business lawfully conducted," but, as the quotation implies, since a negligent use of one's own property to the injury of another is an unreasonable use, the ultimate question after all is whether the use is reasonable. (*Dunsbach* v. *Hollister*, 49 Hun, 352, 354.) Negligence, wrong business methods, improper appliances and the like may bear upon but do not control the question of reasonable use. If the use is reasonable there can be no private nuisance, but if the use is unreasonable and results in substantial injury, an actionable nuisance exists. Trifling results are disregarded, for the courts proceed with great caution and will not interfere with the use of property by the owner thereof unless such use is unreasonable, the injury material and actual, not fanciful or sentimental. *Lex non favet votis delicatorum.* (*Genet* v. *Del. & Hud. Canal Co.*, 122 N. Y. 505, 529; Wood on Nuisances [3d ed.], 679; Jaggard on Torts, 744; Garrett on Law of Nuisances, 146.)

The defendant's business is lawful and not a nuisance *per se*, although it has been found that as carried on it is a nuisance in fact. The extent more than the nature of the injury, the *quantum*, rather than the *damnum*, constitutes the nuisance. Some smoke is generally created by the natural and ordinary use of land near a village or city, and while this

may sometimes be annoying to neighbors it is part of the price paid for living where there are neighbors. But when the smoke is so unusual and excessive as to materially interfere with the ordinary comfort of human existence, the trier of the facts, taking into account all the circumstances, such as public utility, locality, immediate surroundings and the like, may find the use unreasonable. This is not a case where the defendant cannot carry on its business without injury to neighboring property, for all damage can be avoided by the use of hard coal, as is done by one of its competitors in the same kind of business in the same locality, or possibly by the use of some modern appliance such as a smoke consumer, although either would involve an increase in expense. It is better, however, that profits should be somewhat reduced than to compel a householder to abandon his home, especially when he did not "come to the nuisance," but was there before. "The safety of property generally is superior in right to a particular use of a single piece of property by its owner. It renders the enjoyment of all property more secure by preventing such use of one piece by one man as may injure all his neighbors." (*Sullivan* v. *Dunham*, 161 N. Y. 290, 300.)

The use made of property may be unpleasant, unsightly or, to some extent, annoying and disagreeable to the occupants of neighboring property without creating a nuisance. When, however, it not only interferes materially with the physical comfort of persons in their own homes, but also causes some financial injury to the owner, it constitutes a nuisance. That is this case, and the facts found compel an affirmance except in one particular.

The conclusion of law that the defendant should be enjoined from burning soft coal on its premises to make steam is too broad, for it is unlimited as to time or circumstances, and the judgment follows the conclusion. If the defendant, by the use of some appliance now known or which may become known hereafter, can burn soft coal in its factory without injury to the plaintiff, it cannot lawfully be deprived of that

right. If the plaintiff should convert his house into a factory, using soft coal, he would not be entitled to an injunction. The defendant, therefore, should be permitted to apply at Special Term, upon proper notice at any time, for a modification of the decree at the foot thereof, permitting it to burn soft coal, upon proof of such a change of facts as to make such use of its property no longer unreasonable. Subject to this modification the judgment should be affirmed, with costs.

O'Brien, J. (dissenting). The plaintiff recovered a judgment in this case, enjoining the defendant from the transaction of business on its own land. Damages have also been awarded to the plaintiff as compensation for the injury complained of. The question arising upon the appeal is whether the facts found in the case sustain the conclusion of law.

The act of the defendant, which is the basis of the recovery, is that it is burning soft coal to generate steam in the manufacture of natural carbonic gas. The plaintiff has no right to complain of the manner in which the defendant is transacting its business unless it is in violation of some legal right which he may assert against the defendant. It is important, therefore, to state the facts which the court found, and which it is contended support the judgment. The claim of the plaintiff is that his dwelling house, in consequence of the business which the defendant is engaged in, has been rendered uncomfortable. It is found that this dwelling house is situated in a district so sparsely settled that it may properly be called neither a residence, factory nor business neighborhood. It is a country district near the village of Saratoga, which is appropriate for country homes, although not as yet so appropriated by others than the plaintiff himself. The defendant is and has been for some time engaged in the manufacture and development of natural carbonic gas, maintaining a plant with buildings and machinery thereon for that purpose upon lands adjoining the plaintiff's premises. This plant is operated by steam power used to compress natural gas extracted from

mineral springs into semi-solid form convenient for shipment to the market. There are several frame buildings, an iron gasometer and two ninety-feet smokestacks. These smokestacks are eight hundred and forty feet distant from the plaintiff's residence. Soft coal is used in the boilers to generate the steam for the purpose of operating the plant, and from about two and one-half to four tons of soft coal are used daily by the defendant corporation. It may, I think, be assumed, although the fact is not found distinctly, that the defendant's business must be carried on, if at all, in the vicinity of mineral springs, and hence the defendant's plant was located with reference to that fact.

Of course volumes of smoke are emitted from the smokestacks produced by the use of soft coal, especially when the fires are freshened, as they are twice an hour. It is also found that there are times when the direction of the wind is such that the smoke blows down upon the plaintiff's house, and at other times when the atmosphere is dense and the wind right that clouds of smoke proceeding from the chimneys gather and settle about the plaintiff's house, sometimes obscuring it from view. This annoyance it seems is not continuous, but exists when the wind is in the right direction and the atmosphere is dense. The language of the finding on this subject is this : " That said smoke when the wind is in the proper direction and the condition of the atmosphere is right comes down and around plaintiff's house and premises." That the smoke and soot emitted from the chimneys has caused the exterior of the plaintiff's house to become discolored and has caused plaintiff and his family discomfort and annoyance and some financial injury, and that this is all caused by the use of soft coal. It is also found that the defendant could obviate this inconvenience or annoyance by the use of anthracite coal in its plant and would obtain the same result in manufacture, although at greater expense, and, hence, that the present use of soft coal is not a necessary use for the practical management and running of its plant.

The court in its findings expressly negatived some facts

which the plaintiff sought to establish. It is found that no injury has been occasioned by the use of soft coal by the defendant to the trees or shrubbery of the plaintiff; that the use of soft coal by the defendant has not caused any injury to the health of the plaintiff or his family for which damages could be recovered; that there is nothing to show that plaintiff's house would not by this time require washing and painting even if it had not been soiled by the smoke from the defendant's plant; that no permanent injury has been done by the use of soft coal by the defendant to the plaintiff's furniture or to the interior decorations of his house. As a conclusion of law the court held and decided that the use of soft coal by the defendant in the operation of its plant is not a reasonable or necessary use, and that the discomfort and damage to the plaintiff are occasioned by the unreasonable use by the defendant of its property, and, therefore, that the defendant should be enjoined, restrained and forbidden from burning soft coal in the operation of its plant for the purpose of generating steam. There is no finding in the record that the defendant was guilty of any negligence in the operation of its plant or the conduct of its business, nor is there any finding that the use of soft coal as described in the findings referred to is *per se* a nuisance. The appeal, therefore, presents the single question whether upon the facts found there is any support for the judgment.

The principal authority upon which the learned counsel for the plaintiff relies in support of the judgment is the case of *Bohan* v. *Port Jervis G. L. Co.* (122 N. Y. 18). It seems to me that there is a very material distinction between that case and the one at bar. The act there complained of was the use of naphtha in the manufacture of gas. The defendant erected a tank on its own premises, the southern side of which was within a few feet of plaintiff's premises. It was found that naphtha is an offensive, noxious, unhealthy and sickening mineral substance, destructive to the health and comfort of those required to be and remain in close proximity to it; that the defendant's tank was erected and is main-

tained in a negligent and unskillful manner and by reason of
the negligence and want of care upon the part of the defend-
ant in the construction, use of and maintenance of said tank,
and the negligent and unskillful manufacture of gas from
naphtha, the defendant maintains a nuisance injurious to the
comfort and enjoyment of the plaintiff and to the rental
value of his premises. So that there was an allegation in
that case, not only of negligence on the part of the defendant,
but it was charged with maintaining a nuisance; and the
character of naphtha as described in the allegation is widely
different from anything that may be said in regard to the
emission of smoke resulting from the use of soft coal. More-
over, the location of the tank within a few feet of the plain-
tiff's premises was an important element in the case which is
absent from the case at bar. That case was tried before a
jury and a general verdict rendered in favor of the plaintiff,
so that all the facts alleged in the complaint must be deemed
to have been found by the jury against the defendant. In
the case at bar the trial was before the court and the judg-
ment rests upon distinct findings of fact. The findings in
this case practically negatived all the facts which were the basis
of the recovery in the case referred to.

It is quite true that in the case at bar the court held as a
conclusion of law that the use of soft coal in the operation of
the defendant's plant was not a reasonable or necessary use of
its own property. That of course is not in any sense a find-
ing of fact, but a conclusion of law. What acts are to be
considered reasonable or unreasonable is a question which has
been very much discussed, and there is abundance of authority
on the subject. When we say that an act is reasonable we
mean that it is conformable or agreeable to reason. A
reasonable act signifies such an act as the law requires or per-
mits. (1 Blackstone's Com. 70; 2 Bouvier [Rawle's rev.],
828.) A reasonable use by one of his own property is a con-
clusion derived from reason or the intellectual process of argu-
ment. In this case there is no dispute whatever in regard to
the facts. The defendant used soft coal to generate steam,

and that is the end of the discussion as to the facts, but
whether such use is a reasonable use is a pure question of
law.   If the defendant acted reasonably in establishing its
factory near a mineral spring and operated it, using soft coal
to generate steam, that is the end of the discussion so far as
it concerns the defendant.   There is no principle of law better
established than this : When the direct fact in issue is estab-
lished by undisputed evidence and such fact is decisive of the
case, a question of law is raised and the court should decide
it.   It is not for the jury to find in such a case as this that
the defendant's conduct of its business was unreasonable.
That is something which the court must decide as matter of
law, and in this case the finding of the court is one of law
and not of fact.   ( *Wright* v. *Bank of Metropolis*, 110 N. Y.
237; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 31;
*Ryan* v. *M. R. Co.*, Id. 126; *Moore* v. *Francis*, Id. 199;
*Hazzard* v. *Flury*, 120 N. Y. 223; *Reilly* v. *Dodge*, 131
N. Y. 153; *Bryden* v. *Bryden*, 11 Johns. *187; *Hunt* v.
*Maybee*, 7 N. Y. 266; *Dascomb* v. *Buffalo, etc., R. R. Co.*,
27 Barb. 221; *Cumpston* v. *McNair*, 1 Wend. 457; *Carroll*
v. *Upton*, 3 N. Y. 272; *Craig* v. *Parkis*, 40 N. Y. 181;
*Hedges* v. *H. R. R. R. Co.*, 49 N. Y. 223; *Martin-Barris Co.*
v. *Jackson*, 24 App. Div. 354; *People ex rel. Hogan* v. *French*,
119 N. Y. 493.)   The citation of so many authorities in support
of the proposition stated would seem to be a work of superero-
gation; but inasmuch as it is contended with great earnest-
ness that the finding is one of fact, I thought it useful to cite
the authorities that decide the point which was presented in
various forms and under a great variety of circumstances.

Assuming, as I think we must, that the finding is simply a
statement of law, the case is reduced to the simple inquiry
whether the use of soft coal by the defendant, in the transac-
tion of its business, is, as matter of law, violative of some legal
right of the plaintiff as against the defendant.   In the *Bohan
Case (supra)* the rule that in general controls such a contro-
versy as this was stated in this language: "The principle
that one cannot recover for injuries sustained from lawful acts

done on one's own property without negligence and without malice is well founded in the law. Every one has the right to the reasonable enjoyment of his own property, and so long as the use to which he devotes it violates no rights of others, there is no legal cause of action against him. The wants of mankind demand that property be put to many and various uses and employments, and one may have, upon his property, any kind of lawful business, and so long as it is not a nuisance, and is not managed so as to become such, he is not responsible for any damage that his neighbor accidentally or unavoidably sustains. Such losses the law regards as *damnum absque injuria.*" That case was decided in the Second Division of this court and encountered a vigorous dissent in which two members of the court joined. The result does not, in my opinion, necessarily control the decision in the case at bar. The law applicable to the questions involved in the present case has been stated and settled in a more recent case in this court. I refer to the case of *Booth* v. *Rome, W. & O. R. R. Co.* (140 N. Y. 267). In that case the decision of this court was unanimous and the opinion was written by Chief Judge Aɴᴅʀᴇᴡs, in which the principle was stated in the following language: " The general rule that no one has absolute freedom in the use of his property, but is restrained by the co-existence of equal rights in his neighbor to the use of his property, so that each in exercising his right must do no act which causes injury to his neighbor, is so well understood, is so universally recognized, and stands so impregnably in the necessities of the social state, that its vindication by argument would be superfluous. The maxim which embodies it is sometimes loosely interpreted as forbidding all use by one of his own property which annoys or disturbs his neighbor in the enjoyment of his property. The real meaning of the rule is that one may not use his own property to the injury of any *legal right* of another. The cases are numerous where the lawful use of one's property causes injury to adjacent property, for which there is no remedy, because no right of the adjacent owner is invaded, although he suffers injury. * * *

But whether a particular act done upon, or a particular use of one's own premises constitutes a violation of the obligations of vicinage, would seem to depend upon the question whether such act or use was a reasonable exercise of the right of property, having regard to time, place and circumstances. It is not everything in the nature of a nuisance which is prohibited. There are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort or injury to his neighbor, which are *damnum absque injuria.* * * * The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance, but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own and those of his neighbors, and having in view also public policy."

Applying these principles to the case at bar, the question is whether a person residing in a city, village or other locality where manufacturing is carried on by the use of steam power has the legal right to exemption from annoyance or discomfort resulting from the use of soft coal. The decisions of this court must be the guide in the solution of such a question. In *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 N. Y. 10) Judge Andrews laid down the rule in these terms: " The compromises exacted by the necessities of the social state, and the fact that some inconvenience to others must of necessity often attend the ordinary use of property, without permitting which there could in many cases be no valuable use at all, have compelled the recognition, in all systems of jurisprudence, of the principle that each member of society must submit to annoyances consequent upon the ordinary and common use of property, provided such use is reasonable, both as respects the owner of the property and those immediately affected by the use, in view of time, place and other circumstances." In the earlier case of *Campbell* v. *Seaman* (63 N. Y. 568) the rule was stated by Judge Earl in language somewhat different, but to

the same effect: "It is a general rule that every person may exercise exclusive dominion over his own property and subject it to such uses as will best subserve his private interests. Generally, no other person can say how he shall use or what he shall do with his property. But this general right of property has its exceptions and qualifications. *Sic utere tuo ut alienum non lædas* is an old maxim which has a broad application. It does not mean that one must never use his own so as to do any injury to his neighbor or his property. Such a rule could not be enforced in civilized society. Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city he must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life."

The contention of the plaintiff in the present case is that the defendant in the operation of its manufacturing plant should have used anthracite coal instead of soft coal. It is found that this change must involve an additional expense upon the defendant. The amount of that additional expense has not been found, but it is found that in order to conduct the defendant's business from two and one-half to four tons of coal per day must be burned. The defendant cannot carry on its business without observing due economy in its management. If it can be compelled by the plaintiff for his own comfort to impose additional burdens upon the business, the result may be the loss of reasonable profits, and it may be in the destruction of the business entirely. If the plaintiff can legally demand that the defendant must use anthracite coal instead of soft coal, there is no reason why he may not demand other changes that would enhance his own comforts or enjoyment of his property. It is fair to assume from the findings that the defendant consumes on an average of three tons of coal per day. In the course of a year it is necessary, therefore, to burn about a thousand tons, and as the cost of hard coal would be about two dollars per ton more than that of soft coal, it would

require the defendant to increase the expense of operating its plant in the sum of about two thousand dollars annually. There is nothing in the record to show that the business which the defendant is conducting is a very profitable one. It may well be that the business has not yet produced any profit whatever, and such an increase in the expense might not only absorb the profits, but result in a loss.    It has been said that the power to tax includes the power to destroy, and if the plaintiff or other parties similarly situated, armed with the decree of the court, can compel the defendant to make the changes suggested by the judgment in this case for his own comfort, the application of such a principle might go far to render the defendant's property and business worthless.

It is quite difficult, if not impossible, to state from the findings, with any degree of accuracy, just what the legal injury is of which the plaintiff complains.    No injury has been suffered from the use of soft coal to the trees, shrubbery or the grounds of the plaintiff, nor to his health or that of his family. The smoke and dust have not injured his house either in the interior or exterior, or the furniture or decorations.    It was not shown or found that the conduct of the defendant's business discolored the plaintiff's house in any way.    The present condition in that respect, whatever it is, is due to ordinary use and the lapse of time.    The judgment must stand, if at all, upon that vague and somewhat fanciful claim that his home is not as comfortable as it would have been if the defendant's business was not carried on at all, or carried on in some different manner, or by the use of other materials at greater expense.    No tangible *legal right* of the plaintiff as against the defendant has been or is violated, since whatever effect the operation of the defendant's business and the use of its own property has upon that of the plaintiff in diminishing his personal comfort is one of the results or incidents of residing in a locality where manufacturing is lawfully and necessarily carried on.    All the cases hold that the plaintiff or other parties similarly situated must endure some inconvenience or some degree of discomfort, and I am unable to see why the

facts of this case as found do not bring it within the operation of that principle.

We are not making law for this case merely. A legal principle is involved of far-reaching importance. Whatever we decide in this case must apply to every manufactory or manufacturing establishment in the state. It is a question of comfort on the part of the plaintiff. On the part of the defendant it may be a question of life or death, and it certainly is a question of the right to conduct a business such as that which the defendant is engaged in with good judgment and reasonable economy. There is no question such as was involved in the *Bohan* case, of noxious smells and poisonous vapors due to the use of naphtha, which it was alleged and found was detrimental to health. In the present case it is a question as to how far the defendant may be compelled to increase the expenses of its business in order to secure greater comfort for the plaintiff in the enjoyment of his home. Has he a legal right to demand that his property shall be exempt from smoke, dust or cinders on certain occasions when the wind is in the right direction, or the atmosphere in the right condition to produce the discomforts of which the plaintiff complains? Unless such a legal right exists the judgment in this case is wrong, since it imposes a burden upon the defendant's business greatly in excess of any monetary or other loss resulting from the use of soft coal. It seems to me that within the principles announced by this court and which have been stated, that no such legal right exists, and, hence, the judgment should be reversed and a new trial granted, costs to abide the event.

Gray, Werner, Willard Bartlett and Chase, JJ., concur with Vann, J.; O'Brien, J., reads dissenting opinion; Cullen, Ch. J., absent.

Judgment accordingly.