### KNAUB et al. v. MEYER et al.

(Supreme Court, Special Term for Trials, Kings County. April 26, 1913.)

1. NUISANCE (§ 3*)—USE OF PROPERTY.
   An owner of land holds his right to enjoyment thereof subject to such annoyance as is the consequence of the natural use by his neighbor of his land, so that whether the neighbor's use of his land constitutes a nuisance depends on whether it is a natural and reasonable exercise of his dominion over the property, having regard to all interests affected, and having also in view public policy.
   [Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. § 3.*]

2. NUISANCE (§ 3*)—USE OF PROPERTY.
   The maintenance by the proprietors of an artificial ice plant, in a sparsely settled portion of a city, where there were several stables and no sewer system, the sewage and waste drainage being taken care of by cesspools, of a cistern into which to drain their surplus water, which was colorless, odorless, and in fact fit for drinking purposes, 9 feet in diameter. 40 feet in depth, and lined throughout with brick, which, at the depth of about 40 feet, reached the water table level of that vicinity, the soil being clay for the first 8 or 9 feet and sand and gravel for the rest of the way down, and which was about 5 feet from the house of an adjoining owner, was a reasonable use of their property, and not a nuisance.
   [Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. § 3.*]

3. NUISANCE (§ 3*)—USE OF PROPERTY—NOISES.
   Where a manufacturing plant is operated with only such noise as is necessarily and usually incident to the proper working of machinery, and such noise as is not a bar to conversation held even in close vicinity to the machinery, it is not a nuisance.
   [Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. § 3.*]

Action by Michael Knaub and another against Henry Meyer and another. Judgment dismissing the complaint.

Solomon S. Schwartz, of Brooklyn, for plaintiffs.
Watson & Kristeller, of New York City, for defendants.

MANNING, J. This action is brought to obtain damages and also injunctive relief by reason of the alleged existence of a private nuisance. The plaintiffs own and occupy a two-story and attic frame house situate upon a plot of land 30 by 100 feet on the easterly side

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Lott avenue, Union Course, Queens county, New York. The house was built about six years ago, and with the land is now said to be worth about $5,000. It is in evidence that the actual cost of both land and building was $4,700. The plaintiffs occupy part of the building; the remainder has been let to a tenant. The neighborhood is rather sparsely settled. The character of the improvements are somewhat varied, for in close proximity to the premises of the plaintiffs there are several stables in which horses are kept, and a contractor stores and keeps his wagons in a lot on the same block, and directly opposite is the ice plant of the defendants. There is no system of sewers in that part of Queens county, all sewage and waste drainage being taken care of by cesspools, of which there are a great many in this vicinity; in fact, there is one in the plaintiffs' yard in the rear of their house.

The defendants are the principal owners of a close corporation which is engaged in the manufacture of artificial ice. Their plant is located on the southeasterly corner of Lott and Jamaica avenues, which is about 150 feet distant from plaintiffs' premises. The ice company employs about 30 people, and its product is sold and disposed of to customers living in the immediate vicinity. The factory is not continuously operated, being sometimes shut down for a considerable period of time. The water necessary for the manufacture of ice is procured from a driven well, which the evidence shows was sunk upon the defendants' land close to the factory, and it is necessary in the conduct of the ice factory to dispose of the surplus water, which remains after the ice is made.

Some time prior to July, 1912, defendants purchased a vacant lot 25 feet by 100 feet on Lott avenue immediately adjoining the plaintiffs' house on the north, and proceeded to build and construct a cistern to receive and take care of such surplus water. The cistern is described as being about 9 feet in diameter, about 40 feet in depth, circular in form, and lined throughout with brick. The soil for the first 8 or 9 feet from the surface is clay, and for the rest of the way down sand and gravel. At a depth of about 40 feet it is shown that the water table level of Long Island in this vicinity is struck, and the theory and contention of the defendants is that water forced into the cistern is at once carried away by the subterranean stream, and hence no stale or stagnant water can remain in the cistern. As to the quality and character of the water which runs into this cistern, it was shown by the testimony of an expert and by chemical analysis that it was colorless, odorless, and in fact fit for drinking purposes.

In constructing the cistern in question the defendants built it upon their own land, to wit, on the vacant lot referred to, about 5 feet distant from the northerly wall of the plaintiffs' house, and then connected it with the ice factory by running a line of iron pipe 6 inches in diameter under the ground, and having an opening into the cistern about 4 feet below the surface. The plaintiffs complain that the running of this water from the pipe into the cistern causes so much noise that their rest and sleep is disturbed, and that by reason of steam or vapor arising from the cistern the plaintiffs' dwelling is made damp and unhealthy, and also that by reason of the excavation neces-

sary for the cistern the plaintiffs' building was damaged and the walls cracked, to the plaintiffs' damage in the sum of $3,500.

[1] The plaintiffs' evidence produced on the trial in my opinion does not sustain the allegations set forth in the complaint, and the proof falls far short of the burden they must sustain to succeed in an action of this character. There are numerous· decisions on the question of what is and is not a nuisance, and it would be useless to attempt to reconcile or cite them all. The following, however, state the general doctrine and appear pertinent to the case at issue:

"The owner of lands holds his right to the enjoyment thereof, subject to such annoyance as is the consequence of what is called the natural use by his neighbor of his land, and that, where an interference with his enjoyment by something in the nature of a nuisance is the cause of complaint, no action can be sustained if this is the result of a natural use by a neighbor of his land. * * * The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance; but the inquiry is: Was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own and those of his neighbors, and having in view, also, public policy?" Booth v. R., W. & O. R. R., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552.

[2] In my opinion the location of the property in question, the lack of sewerage, the character of the neighborhood, and the manner of constructing and maintaining this cistern, leads me to the conclusion that to construct and use the cistern in the manner shown by the evidence in this case was a reasonable use of defendants' property.

"Whether the use of property by one person is reasonable, with reference to the comfortable enjoyment of his own property by another, generally depends upon many and varied facts, such as location, nature of the use, character of the neighborhood, extent and frequence of the injury, the effect on the enjoyment of life, health, and property, and the like." McCarty v. Natural Carbonic Gas Co., 189 N. Y. 40, 81 N. E. 549, 13 L. R. A. (N. S.) 465, 12 Ann. Cas. 840.

[3] On the question of noise plaintiffs have failed to meet their burden. As was said by Justice Jenks in Peck v. Newburgh Light & Power Co., 132 App. Div. 82, at page 85, 116 N. Y. Supp. 433, at page 435:

"I think that the evidence does not establish that the noise, ashes, soot, cinders, steam vapor, and steam escape and flashes of light constitute a nuisance as to the plaintiff. That there was once considerable noise I do not doubt. But the evidence convinces me that offensive part of it has ceased, due to the improvements made from time to time in installation or in the working of the plant, and it does not show that at· the time of the trial there was noise other than that necessarily and· usually incident to the proper working of machinery. Indeed, there is considerable testimony that such noise is not a bar to conversation held even in close vicinity to the engines. This is not sufficient to constitute a nuisance."

I am inclined to believe that in the case at bar the injuries alleged to have been sustained by the plaintiffs are more fanciful than real. There might have been some slight noise when the cistern was first constructed, and also, when the air was colder than the water, there may have been some slight vapors arising; but the conditions are

materially improved, for the opening of the cistern is now covered by a permanent shed or frame structure, and the fall of the water is considerably lessened by the lengthening of the pipe by means of a shute inside the cistern, so that, instead of falling 30 feet or more, the fall now does not exceed 10 feet. The cistern has been examined by the department of health of the city of New York, and is now maintained under a permit issued by that department.

As to the damage alleged to have been sustained by plaintiffs to their property, it appears that during the six years the house has been erected the plaintiffs have not made any repairs, and it does not appear that they have lost any rent or income from the property; in fact, it was stated on the trial by plaintiffs' counsel that no loss, so far as rental value, was claimed. The evidence in the case does not justify me in finding that there has been any loss or depreciation in the fee value either. Furthermore the evidence seems to establish that the house now is in as good condition as it ever was, and that the few cracks in the cellar walls probably come from the natural settling of the house, which is very poorly and cheaply built, and not from any fault or neglect on the part of the defendants in building or maintaining this cistern.

Judgment for the defendants, dismissing the complaint, with costs