Rocco Siviglia et al., Plaintiffs, *v.* John Spinelli et al.,
Defendants.

Supreme Court, Equity Term, Cayuga County, November 13, 1947.

*George M. Michaels* for plaintiffs.

*A. J. Contiguglia* for defendants.

Warner, J. Plaintiffs are the owners in fee and the occupants of certain real property in the city of Auburn consisting of. the dwelling and premises known as No. 12 Underwood Street, which said street runs in an easterly and westerly direction. This property is located on the southerly side of the street. There are houses on each side of Underwood Street in the vicinity of plaintiffs' residence. The American Locomotive Works, the Hemingway Canning Factory, the Auburn Shank Company and the Auburn Branch of the New York Central Railroad Company are all in the vicinity of plaintiffs' residence.

Defendants are the owners in fee and the occupants of certain real property consisting of the dwelling and premises known as No. 14 Underwood Street on the south side thereof, adjoining the premises of the plaintiffs and westerly therefrom.

Plaintiffs and defendants have occupied their respective properties since sometime prior to the year 1943. The distance between the houses on said properties is about six feet. Sometime in 1943 the plaintiffs built an additional story over their kitchen and put in two additional windows on the side of their house towards the defendants' residence. Thereafter, plaintiffs complained that the chimney over defendants' kitchen was not sufficiently high causing smoke and soot therefrom to be carried upon plaintiffs' premises to their damage and discomfort. Thereupon defendants built an addition to the said chimney over their kitchen raising it to a height about even with the eaves of the addition built by plaintiffs. Defendants in the same year, 1943, built a chimney over a small shack which stands just at the rear of their residence.

Plaintiffs claim that in the operation of said chimneys and the cook stoves attached to same, the defendants use for fuel, slabwood, bark or other wood materials, and that as a result of the manner in which the defendants use and operate said stoves, said smoke stacks or chimneys emanate a large quantity of smoke, soot and partially burned cinders and shavings which are carried by the winds upon plaintiffs' lands, premises and into their dwelling and on their sidewalks, porches, doors and windows to the great damage and discomfort of the plaintiffs and their family. Accordingly, plaintiffs have brought this action and demand judgment " 1. That the defendants be forever enjoined and restrained from continuing the said nuisance and from casting or permitting to be cast upon plaintiffs' said premises said smoke, soot, burned cinders and ashes; 2. That in the alternative, the defendants be ordered to raise their chimneys to a proper elevation whereby said smoke, soot, burned cinders and shavings will not be carried upon the premises of plaintiffs.''

If the conditions complained of by the plaintiffs constitute a nuisance, then such nuisance is to be classified as a private nuisance since it threatens only a few persons.

In *McCarty* v. *Natural Carbonic Gas Co.* (189 N. Y. 40) the subject of private nuisance is considered and Judge VANN writing for the court said: '' The law relating to private nuisance is a law of degree and usually turns on the question of fact whether the use is reasonable or not under all the circum-

stances. No hard and fast rule controls the subject, for a use that is reasonable under one set of facts would be unreasonable under another. Whether the use of property to carry on a lawful business, which creates smoke or noxious gases in excessive quantities, amounts to a nuisance depends on the facts of each particlar case. * * * Location, priority of occupation, and the fact that the injury is only occasional are not conclusive, but are to be considered in connection with all the evidence and the inference drawn from all the facts proved whether the controlling fact exists that the use is unreasonable. If that fact is found, a nuisance is established and the plaintiff is entitled to relief in some form. Unless that fact is found, or it is an inference of law from other facts found, no nuisance is established, even if the plaintiff shows that he has suffered some damage, annoyance and injury. * * * Whether the use of property by one person is reasonable, with reference to the comfortable enjoyment of his own property by another, generally depends upon many and varied facts; such as location, nature of the use, character of the neighborhood, extent and frequency of the injury, the effect on the enjoyment of life, health and property and the like.''

Does the controlling fact exist here that the use by the defendants of the two chimneys complained of is unreasonable? This fact plaintiffs must establish by a fair preponderance of proof. If so established then the plaintiffs, in addition, must sustain the burden of proof in showing that because of such unreasonable use by defendants that plaintiffs suffer some unnecessary damage or annoyance which is material and substantial.

It was established on the trial that the complaints, with respect to the use by the defendants of the chimney over their kitchen, arose after the plaintiffs had built an additional story over their kitchen. It seems therefor that the priority rights of the defendants reflect an advantage in their favor with respect to the complaints made by plaintiffs after the alteration of their residence. Nor is it to be overlooked that the defendants after the aforesaid alteration incurred expense in raising the chimney substantially over their kitchen in a reasonable effort to satisfy the demands of the plaintiffs and preserve neighborly peace and harmony. However, plaintiffs are now demanding that defendants be either enjoined from continuing the use of said chimney or be ordered to raise it to a proper elevation so that smoke, soot, burned cinders and shavings will not be carried upon their premises.

Plaintiffs called the City Manager and the Fire Chief as witnesses. The former testified relative to complaints made to him by plaintiffs subsequent to January 1, 1944, relative to conditions at No. 14 Underwood Street causing annoyance to plaintiffs at No. 12 Underwood Street. The latter testified to making an inspection at No. 14 Underwood Street in 1943, and that he observed the chimney over the defendants' kitchen which came up to about second story windows at No. 12 Underwood Street; that he directed the occupants of No. 14 Underwood Street to raise said chimney; that he also inspected the shack in the rear of said premises and advised that said shack was a fire hazard and that the chimney thereon should be raised above the gable of the house; that he was at said premises again in 1944 and observed that the chimney over the kitchen on defendants' premises had been raised 18 or 20 inches. It does not appear that any inspection was made by him on either occasion of plaintiffs' premises with respect to any damage by smoke or soot but that he inspected the stove in defendants' kitchen which said stove was of a type in general use.

Plaintiffs called a daughter, Mary Comerico, and a neighbor, Carmela Morabito, who testified that smoke from defendants' chimneys comes over upon and into plaintiffs' premises when the wind is in the west. That this occurs mostly in the morning. The testimony of each of these witnesses was very general with respect to damage and annoyance except for a specific instance in or about Labor Day, 1944, at 4 A.M., when they stated that smoke came into the residence of plaintiffs' causing Mrs. Siviglia to be ill. No medical testimony was offered with respect to the subject and on the whole their testimony was not persuasively convincing with respect either to what occasioned the aforesaid illness or with respect to any substantial damage or annoyance to the plaintiffs with the possible exception of that occasionally caused when a fire is built in the shack in the rear of defendants' premises.

Defendants called some five witnesses who reside respectively at Nos. 18, 16, 9½ and 9 Underwood Street. Each of said witnesses testified that much smoke and soot comes with frequency into and upon their premises, and into and upon the premises of plaintiffs also, from the factories and railroad engines operated in that vicinity. Some three of these witnesses testified that conditions with respect to smoke and soot from the factories coming into that part of Underwood Street, where they and the plaintiffs reside, are so bad that they are compelled frequently to do over again the washings hung on the

clothes lines of their respective premises. These witnesses further testified that they have only rarely, if ever, seen any black smoke and soot coming from the defendants' said chimneys. Another witness called by the defendants testified that she lived upstairs in plaintiffs' residence for four months since 1944 and that she never noticed any smoke or odor and was not annoyed by any smoke or odor coming from defendants' premises.

One of the defendants, Martha Spinelli, testified that in the summer they use oven gas in their kitchen. That during the rest of the year they use coal. That perhaps once a month they start a coal fire with paper and wood, putting on coal as soon as the fire is underway. She denied that her husband built any fire in the early morning of Labor Day, 1944, as testified to by two of plaintiffs' witnesses. She further testified that it was her practice to start a fire in the shack in the same manner as in the kitchen. She stated that she did not intend to make further use of the stove in the said shack.

Carmella Spinelli, daughter of defendants herein, testified that she lives with her parents at No. 14 Underwood Street; that the stove used in their kitchen is a combination gas and coal stove; that they do not use wood to heat but use it only occasionally in starting a coal fire; that she has never seen any smoke or soot go from defendants' premises into the plaintiffs' residence; that no fire was started in defendants' residence at or about 4 A.M., on Labor Day, 1944.

In *Campbell* v. *Seaman* (63 N. Y. 568, 576, 577) it is said: "It is a general rule that every person may exercise exclusive dominion over his own property, and subject it to such uses as will best subserve his private interests. Generally, no other person can say how he shall use or what he shall do with his property. But this general right of property has its exceptions and its qualifications. *Sic utere tuo ut alienum non laedas* is an old maxim which has a broad application. It does not mean that one must never use his own so as to do any injury to his neighbor or his property. Such a rule could not be enforced in civilized society. Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city he must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life."

On the basis of the proofs offered the court concludes that the defendants are not making an unreasonable use of the

chimney over their kitchen to plaintiffs' material and substantial damage and that this court is not justified in finding that defendants are maintaining a private nuisance with respect to the chimney over their kitchen. However, this court is of the opinion that the use of the chimney over the shack in the rear of defendants' premises constitutes a fire hazard and threatens the comfort and enjoyment of plaintiffs and constitutes a private nuisance. The use thereof is enjoined, unless the said chimney is built to a height as great as that of the chimney over defendants' kitchen.

Judgment accordingly.