JOHNSON, Respondent v. DRYSDALE et al, Appellants

(285 N. W. 301.)

(File No. 8196.   Opinion filed April 14, 1939.)

*Williams & Sweet,* of Rapid City, for Appellants.
*Bangs & Rudesill,* of Rapid City, for Respondent.

SMITH, J. Predicated upon the theory that the odors and flies engendered by keeping eight horses in their barn in the midst of a residential district of Rapid City, South Dakota, thirty-four

feet from a rental house owned by plaintiff, unreasonably interfered with the enjoyment of plaintiff's property and was therefore a nuisance, the trial court entered its decree enjoining such use by defendants.

The issues are presented on appeal under an assumption indulged by both parties that the term nuisance, as defined by our law, includes consequences arising from the otherwise lawful use of property. We concur in the view thus assumed.

Prior to the revision of 1919 there were two overlapping definitions of nuisance contained in our statutes. Section 2393, Civil Code, and Section 692, Code of Civil Procedure, Rev. Code of 1903. Section 692 of the Code of Civil Procedure read as follows: "Any thing which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

The 1919 Code omitted the definition contained in this section and revised it to read as follows: "An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by a nuisance, as defined in section 2066; and by the judgment the nuisance may be enjoined or abated, as well as damages recovered." § 2873, Rev. Code of 1919.

Section 2393 of the Civil Code of 1903 was carried forward into the 1919 Code as section 2066, and reads as follows:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"1. Annoys, injures or endangers the comfort, repose, health or safety of others; or,

"2. Offends decency; or,

"3. Unlawfully intereferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or,

"4. In any way renders other persons insecure in life, or in the use of property."

It will be readily apparent that the wording of this remaining definition, which first appeared as a part of the Field Civil Code of New York (cf. section 1940) leaves room for question as to whether it comprehends consequences resulting from acts of commission in the use of property which are not inherently unlawful, and which only take on such a character of illegality if they do in fact unreasonably offend in one or more of the particulars set forth in the subdivisions of this section.

Two considerations have guided us to the conclusion that the Legislature of 1919 intended no such drastic change in the law of nuisance as would result from the exclusion from its embrace of all consequences arising from such otherwise lawful conduct. First, this phase of the law of nuisance has implemented the principle or ideal expressed by the ancient maxim "Sic utere tuo ut alienum non laedas" (cf. section 45, Rev. Code of 1919), and has brought about a wholesome adjustment between the right of use and the right of enjoyment by owners of adjoining or neighboring properties. Until the intention of the Legislature so to do is made plainly to appear, it would be absurd to conclude that they intended to obliterate principles which have played so important a role in the advance of civilization. Secondly, the opinion of this court in the case of Town of Colton v. South Dakota Central Land Company et al., 25 S. D. 309, 126 N. W. 507, 28 L. R. A., N. S., 122, decided long prior to the revision of 1919, contains an implicit construction of the language retained as section 2066 as embracing consequences flowing from the otherwise lawful use of property as a stock yards. We therefore conclude that the intention of the Legislature to make a change in the meaning of the law is not clear. That the wording of the statutes prior to the revision unequivocally described acts of the character we are now considering is manifest.

The statutes of our sister state, North Dakota, are identical to our statutes as revised. Cf. section 7228, North Dakota Compiled Laws of 1913. In at least two instances, although without express mention of the statutory definition, the Supreme Court of that state has treated with fact situations involving otherwise lawful use of property as though such acts were within the ambit of their definition of nuisance. Riffey et al. v. Rush et al., 51 N. D. 188, 199 N. W. 523 (a baseball grounds); Meldahl et al. v. Hol-

berg, 55 N. D. 523, 214 N. W. 802 (an undertaking establishment).

■■ The statute requires construction in another respect. By the literal terms used it purports to embrace every annoyance and injury to comfort, as well as everything rendering one insecure in the use of his property. If it were so construed, every petty infringement upon the enjoyment of property would constitute a nuisance. Such is also the form of the maxim to which we have adverted, supra. As it has been translated into our statute it purports to say, without qualification, "One must so use his own rights as not to infringe upon the rights of another." Section 45, Rev. Code of 1919. This same all embracing absolutism seems to have appeared in the definitions of nuisance from the outset. For instance, Blackstone defined nuisance as "Any thing that worketh hurt, inconvenience, or damage." 3 Black. Com. 216. Notwithstanding this comprehensiveness of form in statement, in application, in cases dealing with the otherwise lawful use of property, the definition has been universally restricted by a rule of reason. St. Helen's Smelting Co. v. Tipping, 11 H. L. C. 642, 11 Reprint 1483; Barnes v. Hathorn, 54 Me. 124.

Through the operation of this rule of reason, not only is a balance maintained between the right to the enjoyment of property on the one hand and the right to use property on the other, of which we have made reference, but through it also, because what is reasonable is determined in the light of neighborhood uses of property and the trends and changes in such use, as well as in view of the more immediate situation of the parties litigant, the way is opened for the march of civilization. It is in the field of unreasonable use that the law of nuisance is operative. The ultimate question in each cause is whether the challenged use is reasonable in view of all of the surrounding circumstances. Having regard for the needs and methods of defendant, the degree of discomfort and injury occasioned plaintiff in person or in the enjoyment of his property, and the present use and trends of use of surrounding property, if the use made by defendant is not such as an ordinary man would make, and the resulting discomforts and injuries are not such as people of common sensibilities and tastes should be required to endure, the questioned use is unreasonable. Town of Colton v. South Dakota Central Land Company et al.,

supra; Hyde v. Minnesota, D. & P. Ry. Co. et al., 29 S. D. 220, 136 N. W. 92, 40 L. R. A., N. S., 48; Page et al. v. Brooks, 79 N. H. 70, 104 A. 786; Gose v. Coryell, 59 Tex. Civ. App. 504, 126 S. W. 1164; McCarty v. Natural Carbonic Gas Co., 189 N. Y. 40, 81 N. E. 549, 13 L. R. A., N. S., 465, 2 Ann. Cas. 840; Brede et al. v. Minnesota Crushed Stone Co., 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092; Joyce, Law of Nuisances, § 33; 46 C. J. 655; 2 C. J. Sec. § 1; 1 Am. Jur. 505; Cooley on Torts, §§ 429 and 433. These principles condition the application of our statute.

▇ The assignments question two findings of fact and a conclusion of law made by the learned trial court. It is said that the overwhelming weight of the evidence is opposed to the findings (1) "That from the horses maintained in said barn the excrement therefrom accumulates on said property, causing noxious exhalations, offensive smells, unwholesome smells and stenches to arise, and the air becomes greatly corrupted and infected thereby and is dangerous to the health, comfort and property of the people residing in said district, and in particular to the people residing in the property belonging to the plaintiff, and is a breeding and feeding place for countless flies and other insects, and a nuisance to the people living in the vicinity of said barn," and (2) "That the property of the plaintiff has been and is being continually damaged by the maintenance of the barn and the keeping of horses on the premises of the defendants, and that the plaintiff has had difficulty in securing and keeping tenants in the property belonging to the plaintiff," and that the findings as a whole do not support the conclusion of law that the keeping of the horses in the barn constituted a nuisance. Other unquestioned findings fix the character of the district as residential, and the proximity of the barn to plaintiff's property. Obviously, if the evidence is sufficient to support these findings, the use of defendants is unreasonable and results in a nuisance to plaintiff. We therefore confine ourselves to a consideration of the findings.

In presenting these assignments the defendants content themselves with an analysis of the testimony of witnesses with reference to the presence of odors and flies, and as to the injury and damage to surrounding property, and contend that such testimony is not sufficiently clear and definite to establish a nuisance, and

that the resulting injury to plaintiff is not serious enough to serve as the basis for the harsh remedy of injunction. Such a presentation will not withstand analysis. It ignores the physical facts and the inferences the learned trial court was permitted to draw therefrom. The evidence discloses that the defendants are keeping eight horses in a frame, plank floor barn only thirty-four feet from plaintiff's house in the midst of a strictly residential district. Manure is permitted to accumulate in the open outside the barn until it is hauled away at ordinary intervals of twice a week or occasionally at more frequent intervals during the heat of the summer. A fly spray was used at the barn twice a day. The block in which the barn is located, the one across the street, and another adjoining block are almost completely improved with residences, and there is no evidence that other barns or outhouses are located within the district. The testimony which appellants so carefully analyze is in addition to this showing of the physical facts. That the witnesses did testify that there were offensive odors and flies emanating from the barn, and that the presence of the barn and its' odor depressed rents and rendered it difficult to secure and hold tenants, cannot be questioned. One witness who was testifying as to the strength of the odor measured at a point across the street said, in substance, that after a shower it "was pretty raw."

Although barns are not so common as they were before the advent of the automobile, they are still numerous enough in this agricultural country so that the pungency of their penetrating odors, and the fact that they do constitute a breeding place of flies, are matters of common knowledge. This common knowledge of the men of this section includes not only an accurate understanding of the flies and odors incident to an eight horse barn, but also a keen appreciation of the normal reaction thereto of the ordinary householder and that of his wife, as well as the difficulties which naturally and normally attend the renting of living quarters located in close proximity to such a stable.

In weighing the sufficiency of the evidence we may not close our eyes to these matters of common knowledge. Neither do we think that these realities are dissolved for the man of ordinary sensibilities by the suggestion that the odor of a barn is not loathsome and is not distasteful to those folks who have lived on a

farm. We are of the opinion that the standards of the ordinary or common people of our cities do not sanction the odor of the barn in their living quarters, and do not require the housewife to contemplate a barn yard as the recent abode of the house fly about to alight on the family food.

We unhesitatingly conclude that the evidence was sufficient to support the assailed findings of the trial court. Lead et al. v. Inch et al., 116 Minn. 467, 134 N. W. 218, 39 L. R. A., N. S., 234, Ann. Cas. 1913B, 891. Cf. Annotation 17 L. R. A., N. S., 1025 . And in view of the language of section 2873, Rev. Code of 1919, supra, it seems equally clear to us that the court was justified in enjoining the nuisance. Pomeroy, Equitable Remedies, § 1927.

In arriving at this conclusion we have not been unmindful of the situation of defendants, and of the severity of the blow the judgment of the trial court entails. It is elementary, however, that the reasonableness of the use made can not be judged solely by the necessities of the defendants.

Lastly, appellants say that the nuisance is public, and that plaintiff has failed to evidence a special damage as required by section 2075 of the Rev. Code of 1919, reading as follows: "A private person may maintain an action for a public nuisance if it is specially injurious to himself, but not otherwise."

Conceding, without deciding, the public character of the nuisance, because it is found to result in damage to plaintiff through injury to her property, she has suffered such special damage as the statute contemplates. Fisher v. Zumwalt, 128 Cal. 493, 61 P. 82; Cf. Section 2873, Rev. Code of 1919, supra.

The judgment and order of the learned trial court are affirmed.

All the Judges concur.