CITY OF HILLSDALE *v.* HILLSDALE IRON &
METAL COMPANY, INC.

1. MUNICIPAL  CORPORATIONS—ZONING  ORDINANCE—SCRAP  METAL
YARD—RESIDENCE USE—RAILROAD RIGHT-OF-WAY.

  Objection of defendant scrap metal yard operator to application
  of plaintiff city's zoning ordinance to its 247' x 660' tract
  at end of a street which had been dedicated but not con-
  structed across defendant's property, that zoning restricting
  use to single residences only was unreasonable because of
  defendant's landlocked condition, *held,* without merit, since
  the property could be used for residential purposes, connect-
  ing with the street to the north, other property to the west,
  north, and south are developed into residential areas and
  railroad line on the east forms a clear line of demarcation
  to less desirable residential area to the east, the presence of
  a railroad right-of-way not being sufficient to render zoning
  for residential purposes arbitrary and unreasonable.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Zoning §§ 21, 22.
[2]  58 Am Jur, Zoning § 16.
[3]  58 Am Jur, Zoning §§ 92, 139.
[4]  58 Am Jur, Zoning §§ 92, 141.
[6]  58 Am Jur, Zoning § 93.
[7]  37 Am Jur, Municipal Corporations § 200.
[8]  58 Am Jur, Zoning § 188.
[9]  37 Am Jur, Municipal Corporations § 144 *et seq.*
[10] 58 Am Jur, Zoning § 158 *et seq.*
[11] 39 Am Jur, Nuisances §§ 46, 146.

2. SAME—ZONING ORDINANCE—PRESUMPTIONS.
   A municipal zoning ordinance is presumed to be reasonable and
   constitutional and the burden is on the party attacking it
   to establish the contrary.

3. SAME—ZONING ORDINANCE—SCRAP METAL YARD—RESIDENTIAL
   USE.
   Defendant scrap metal yard operator whose property was zoned
   for single residence use after he had commenced operations
   there *held,* to have failed to sustain burden of proof that such
   zoned use was an unreasonable one or that such limitation
   would occasion defendant great financial loss under circum-
   stances presented.

4. SAME—ZONING ORDINANCE—DEPRESSION OF VALUE—EVIDENCE.
   City's suit to enjoin defendant scrap metal yard operator's
   extension of operations in residentially-zoned area did not
   constitute an attempted expropriation of defendant's property
   by depressing values and enabling city to make a less ex-
   pensive addition of defendant's property to nearby park,
   where there is no testimony to such effect, property has
   value for residential use and is not unfit therefor except
   as defendant's violation of the ordinance makes the area
   unfit for residential use.

5. SAME—ZONING ORDINANCE—DISCRIMINATION—SCRAP METAL YARD
   —RESIDENCE USE.
   Discrimination as to use of property of defendant scrap metal
   yard operator by including it in area zoned for single
   residence use *held,* not to have invalidated the application
   of the ordinance to defendant's property, under record
   presented, which shows railroad track on east side is but
   little used and forms a clear line of demarcation between
   property given a less desirable residential use and other
   property to west of tracks, which is, where developed, used
   for residential purposes, and uses denied defendant are a block
   away and on the other side of the tracks.

6. SAME—ZONING ORDINANCE—EXISTENCE OF NONCONFORMING USE.
   The existence of a nonconforming use of property for scrap
   metal yard does not, alone, render a zoning ordinance
   restricting use to single residences unreasonable as applied
   to such property although it is a factor to be considered,
   but continuance of such use is all to which the yard owner
   is entitled.

7. SAME—ZONING ORDINANCE—BUILDING PERMITS—ESTOPPEL.
   City council's permission to defendant scrap metal yard operator

to erect a building to be used for residence and office purposes which was so used as to constitute an extension of the nonconforming use in area zoned for single residence use did not estop city from thereafter seeking injunction against use violative of the ordinance, as a city cannot be estopped from enforcing a valid ordinance by acts of its officers in violation thereof.

8. SAME—ZONING ORDINANCE—EXHAUSTION OF ADMINISTRATIVE REMEDIES.

A city which seeks to enforce its zoning ordinance by way of injunction against a use claimed to be in violation thereof need not petition its board of zoning appeals for a variance in order to avoid an unnecessary hardship upon the owner of property, hence court had jurisdiction of such suit for injunction, where neither side had sought a variance.

9. SAME—ZONING ORDINANCE—ADOPTION—PUBLIC HEARING—MAP.

City zoning ordinance *held,* to have been lawfully adopted, where compliance was had with respect to the holding of a public hearing and attachment of a map of the affected area, notwithstanding the map was not kept with the text of the ordinance when enrolled, parol evidence being admissible to show the holding of a public hearing and of public notice through the use of accurate and official map (CL 1948, § 125.584).

10. INJUNCTION—SCRAP METAL YARD—MECHANIZATION AND MODERNIZATION—ZONING ORDINANCE—EXTENSION OF NONCONFORMING USE.

Mechanization and modernization of scrap metal yard after adoption of zoning ordinance including it in a zone restricted to single-residence use, was properly found by trial court to have been an unlawful extension of such nonconforming use and enjoinable, where it appears the operations have changed the purpose from principally a scrap storage yard to one where there is a metal crushing, grinding, or chopping machine and equipment for processing scrap metal, involving the burning of automobile tires and bodies causing large amounts of dense smoke, flames, odors, noises, and vibrations offensive to the neighborhood.

11. NUISANCE—SCRAP METAL YARD—ZONING—RESIDENCES—EXTENSION OF NONCONFORMING USE.

A private nuisance and a public nuisance, enjoinable at suit of plaintiff city and owners of neighboring residences against defendant scrap metal yard operator *held,* to have been established by showing that mechanization and moderniza-

tion of scrap metal yard so as to convert it to a metal processing plant where automobile tires and bodies are burned, metal is crushed, smashed, or chopped in such a way as to cause annoyance of neighbors because of smoke, noise, and odors, and, as such, subject to injunction against operations in extension of nonconforming uses permitted at time ordinance was adopted.

Appeal from Hillsdale; Breakey, Jr. (James R.), J., presiding. Submitted October 6, 1959 (Docket No. 1, Calendar No. 47,150). Decided January 4, 1960.

Bill by the City of Hillsdale, a municipal corporation, Thurman C. Diethrich and other property owners against the Hillsdale Iron & Metal Company, Inc., a Michigan corporation, to restrain extension of scrap metal yard operations in residentially zoned area. Decree for plaintiffs. Defendant appeals. Affirmed.

*Harvey W. Moes,* for plaintiff City of Hillsdale.

*Dimmers, MacRitchie & Moes* (*Albert W. Dimmers,* of counsel), for individual plaintiffs.

*Kenneth W. Huggett,* of counsel for plaintiffs.

*Butzel, Levin, Winston & Quint,* for defendant.

Dethmers, C. J. Defendant appeals from decree restraining it from operating its scrap yard in a residential zone in plaintiff city in a manner held to constitute an extension of a permitted nonconforming use and a nuisance. We affirm. The individual plaintiffs occupy neighboring residences.

Defendant's first main contention is that the zoning ordinance in question is, as applied to its property, unreasonable and unconstitutional for a number of reasons, which we consider seriatim.

(1) The ordinance zones defendant's property and the area around it for single residence use only. It also provides that no lot shall be used for a dwelling unless it abuts for its full frontage upon a street or place. A place is defined as an open, unoccupied space, 30 feet or more in width, used for purpose of access to abutting property. Defendant's property is 247 feet wide north and south, and 660 feet long east and west. It does not abut on a street on any side, but a street ends at about the center of its north boundary. An extension thereof across the center of defendant's property was dedicated but never constructed. Defendant bought subject to the easement thereof. The street continues again somewhat south therefrom. Defendant objects to application of the ordinance to its property as unreasonable on the ground that its landlocked condition makes its use for residential purposes impossible under the above noted street or "place" frontage requirement of the ordinance. There is, of course, nothing to prevent defendant from laying out streets or "places" on its property, connecting with the street to the north. The dimensions of the property would permit this to be done in a manner making it usable for several dwelling lots in conformity with the ordinance. There is no merit to this objection.

(2) Defendant says the character and location of the site make it unsuited to residential development. The lands immediately to the north and south are zoned residential and contain a number of residences of a value ranging from $2,000 to $22,000. On the west is a high hill and undeveloped area. A railroad right-of-way bounds the property on the east and beyond that is a street and along its east side some substandard dwellings. East of the tracks there is industrial activity about a block north and also a block south of defendant's property. The railroad right of way forms a clear line of demarca-

tion between land used for desirable residential purposes on the west and less desirable residential, commercial and industrial on the east. Not yet has it been held here that the proximity of a railroad right-of-way alone will automatically render zoning for residential purposes arbitrary and unreasonable. The ordinance is presumed to be reasonable and constitutional, and the burden is on defendant to establish the contrary. *Portage Township* v. *Full Salvation Union,* 318 Mich 693. Other than proofs as to uses of property in the vicinage as above outlined, there is no evidence on the subject. It is not shown that the property cannot reasonably be used for residential purposes, that it has no economic value for that purpose, or even that limiting it thereto would occasion defendant great financial loss. The fact is that the neighboring properties west of the tracks, and some east of them, now are being so used and there is nothing to indicate any peculiarity about defendant's property, also west of the railway, making it less suitable therefor.

(3) Despite the presence of an adjacent city park to the southeast and existence of a city plan to extend it to include defendant's property, this is not, as defendant suggests, a case of attempted expropriation like *Grand Trunk Western R. Co.* v. *City of Detroit,* 326 Mich 387, because there is no evidence here, as there, of zoning for the purpose of depressing values and thereby enabling the city to make a less expensive acquisition of the property for its purposes. Neither is there the testimony here, as in that case, of "clanging bells, dirt, noises and smoke from passing trains and switching engines," except those coming from defendant's violation of the ordinance, making the area unfit for residential use. Here the record shows that but one train passes by per day.

(4) Neither is discriminatory action presented on this record as in *Laramie & Son, Inc.,* v. *Southfield Township,* 326 Mich 410, where an adjacent owner was permitted a use denied the plaintiff. Here the neighboring properties lying, as does defendant's, west of the railroad are zoned and, where developed, used for residential purposes. What is permitted a block to the north or south, east of the tracks does not establish discrimination as to defendant's property lying west of the tracks amidst residences. A line has to be drawn somewhere and the tracks seem to present a reasonable one under the existing conditions.

(5) Defendant suggests a novel theory, which we do not adopt, that the existing nonconforming use of its property itself renders the zoning unreasonable. It is a factor in determining reasonableness, to be sure, but under the facts in this case the permitted continuing nonconforming use, in the midst of the neighboring residences, gives defendant all it is entitled to on that score.

Defendant's next major contention is that prior administrative proceedings bar this suit. We consider arguments under that heading in the order presented.

(1) The city council had granted defendant a permit to build a building to be used for permitted residence and office purposes. Defendant used it as an office and scale house, in a manner held by the court to be an extension of the nonconforming use. The city had also issued defendant a license to operate a scrap yard. This is not shown to be inconsistent with the permitted nonconforming use. Defendant says the city is, thereby, barred from seeking an injunction and the court may not enjoin its use for that purpose, even though that use is exercised in a manner violative of the ordinance. The city cannot be estopped to enforce its valid ordinance by acts of

its officers in violation thereof. *Fass v. City of High-land Park*, 326 Mich 19. See, also, *West Bloomfield Township* v. *Chapman*, 351 Mich 606, in which a building permit was obtained for a permitted purpose and, after its construction, the building was used for another purpose violative of the ordinance.

(2) Defendant says the city, before bringing this suit to enjoin violation of the ordinance, must exhaust its administrative remedies by appeal to the board of zoning appeals, which, by provisions of the ordinance, has power to vary its terms in order to avoid unnecessary hardships to the property owner. Here defendant had sought no such variance. The city desired none. The object of the city was to have the ordinance enforced, not varied. That required no previous proceeding before the board to consider a possible variance.

(3) There was no application presented by the parties on either side for a variance and, hence, defendant is mistaken in its position that the court, in taking jurisdiction of the case, was required to determine whether a variance should have been granted.

Defendant says the ordinance was not validly enacted. Its claim is, first, that the ordinance refers to and makes an attached map a part thereof, but no map was attached to the text as enrolled in the record of ordinances. Minutes from the journal of the common council disclose that the notice of public hearing on the proposed ordinance contained the statement that a copy of the ordinance and its accompanying map were on file for public inspection at the city hall. Testimony disclosed the presence of the map at that hearing and that thereafter tracings were made from it and printed and published with the ordinance in booklet form, whereupon the original map was returned to the engineer who had prepared it. No question is raised as to the accuracy of the

printed maps. The following testimony of that engineer appears in the record:

"The tracing which I identified as exhibit E is a copy of the original which the city engineer gave me. It is a brownprint made direct from the tracing. The map that is in that ordinance is an official map according to the terms of the ordinance and my understanding of it."

The fact that the original map, as presented at the hearing and approved by the council, was not left in the record of ordinances but returned to the engineer could not have the effect of invalidating the ordinance. *Stevenson* v. *Bay City,* 26 Mich 44. Although the journal does not record it, there is ample parol evidence that a public hearing on the ordinance was had as required by law.* The parol evidence was admissible for that purpose. *Township of North Star* v. *Cowdry,* 212 Mich 7.

Holding the ordinance, as we do, to have been lawfully adopted, reasonable, constitutional, and enforceable as applied to defendant's property, we reach the question whether defendant's use of the property at the time suit was commenced was a permitted nonconforming use. Defendant admits that through the erection of certain buildings and installation of certain machinery and equipment, as well as a spur railroad track, the operation of the scrap yard has become more mechanized and intensified, since the effective date of the ordinance. Testimony establishes that before the ordinance the business carried on at the location in question was largely storage of scrap metal. Since then a metal crushing or grinding or chopping machine and equipment for processing scrap metal have been operated there. The court found, on competent evidence, that since effective date of the ordinance, the operations

---

* See CL 1948, § 125.584 (Stat Ann 1958 Rev § 5.2934).—REPORTER.

changed from gathering and storing and shipping of scrap to processing of scrap metal, to burning of automobile tires and bodies causing large amounts of dense smoke and flames and offensive odors which annoyed the neighborhood and to smashing and crushing automobile bodies and other large pieces of metal, which created loud and disturbing noises and vibrations within neighboring dwelling houses. Defendant says this mechanization and modernization and extension of its operations from storage to processing is necessary to enable it to meet competition. Plaintiffs say it amounts to a change in and an unlawful extension of the nonconforming use. In this plaintiffs are supported by *Austin* v. *Older,* 283 Mich 667, and *Cole* v. *City of Battle Creek,* 298 Mich 98. The trial court's decree was correct in prohibiting and enjoining the use and maintenance of machinery, equipment and buildings placed on the premises after effective date of the ordinance and used for processing metal and for operations which constitute an extension of the nonconforming use.

The court also found that the operation of machinery so as to cause vibrations and loud noises which disturb the peace and quiet of the neighborhood and the burning of materials causing smoke and odors offensive to neighbors was a nuisance and enjoined the same. Despite defendant's urging to the contrary, we think a private nuisance was adequately pleaded and proved, as well as a public nuisance in operations violative of the ordinance, namely, those being in extension of the permitted nonconforming use. Defendant cites authority for the proposition that the natural or inherent annoyances of a legitimate business, lawfully conducted, are not the subject for injunctive relief. Here the operations complained of and enjoined are not lawful, but, on the contrary, violate the ordinance because they are not within the permitted nonconforming use.

The decree does not, as complained, go too far, nor is it lacking in specificity.

Decree affirmed.   Costs to plaintiffs.

CARR, KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.