CITY OF ABERDEEN, Katherine Silvernail, Donald Thayer, Beverly Thayer and Bernadine Velasquez, Plaintiffs and Appellees,

v.

Allan WELLMAN and Arlene Wellman, Defendants and Appellants.

No. 14249.

Supreme Court of South Dakota.

Considered on Briefs April 17, 1984.

Decided July 25, 1984.

Charles B. Kornmann, Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, for plaintiffs and appellees.

Greg L. Peterson of Bantz, Gosch, Cremer & Peterson, Aberdeen, for defendants and appellants.

FOSHEIM, Chief Justice.

Allan and Arlene Wellman (appellants) appeal a judgment which declared their business use of real property a public nui-

sance and enjoined certain activities. We affirm.

Appellants own three lots in a subdivision less than one mile north of the Aberdeen city limits. The area has been platted but is largely undeveloped. The land north of the disputed area is unplatted farm ground. The subdivision is bounded on the south by a well-travelled, hard surface road. Across that road, and to the south, is a junior high school and a tennis court/swimming pool complex.

In 1973, appellants entered the gravel and road construction business. They use the property for office, storage, repair and safekeeping of construction equipment. They have also piled gravel on one of the lots.

In 1981, the City of Aberdeen (City) commenced an action against appellants alleging that appellants were creating a nuisance which they asked the court to abate. The complaint was amended to include, as plaintiffs, several owners of abutting property. The complaint raised other issues which are not involved in this appeal.

The trial court found that appellants operated payloaders, bulldozers, road graders, gravel trucks, and other machinery in close proximity to adjoining property. Appellants started large engines in the early morning hours and operated noisy vehicles without mufflers. They painted equipment with a spray paint which emitted odors. Welding operations, diesel trucks and burning in open containers produced smoke and fumes. Traffic from employees and customers crossed the property of adjacent land owners. Equipment, machinery, inoperable vehicles, lumber and wooden pallets were stored on the lots.

■ The trial court concluded that appellants created a public nuisance with the sight, noise and fumes produced by their business activities. The nuisance was permanently enjoined.

SDCL 21–10–1 provides:

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

(1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;

(2) Offends decency;

(3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street, or highway;

(4) In any way renders other persons insecure in life, or in the use of property.

A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal. SDCL 21–10–3.

■ The existence of a nuisance is subject to a rule of reason. It involves the maintenance of a balance between the right to use property and the right to enjoy property unaffected by others' uses.

The ultimate question in each cause is whether the challenged use is reasonable in view of all of the surrounding circumstances. Having regard for the needs and methods of defendant, the degree of discomfort and injury occasioned plaintiff in person or in the enjoyment of his property, and the present use and trends of use of surrounding property, if the use made by defendant is not such as an ordinary man would make, and the resulting discomforts and injuries are not such as people of common sensibilities and tastes should be required to endure, the questioned use is unreasonable.

*Johnson v. Drysdale*, 66 S.D. 436, 440, 285 N.W. 301, 304 (1939). Additionally, a nuisance must be a condition which substantially invades and unreasonably interferes with another's use, possession, or enjoyment of his land. *Greer v. City of Lennox*, 79 S.D. 28, 107 N.W.2d 337 (1961).

In *Town of Colton v. South Dakota Cent. Land Co.*, 25 S.D. 309, 312–313, 126 N.W. 507, 508 (1910) we said:

Where a municipal corporation is ... clothed with express power to declare what shall constitute a nuisance, its decision, if reviewable by the courts, should be sustained unless palpably unreasonable.

The trial court's findings of fact are presumptively correct. *Hilde v. Flood*, 81 S.D. 25, 130 N.W.2d 100 (1964). They shall not be set aside unless clearly erroneous. SDCL 15-6-52(a); *Hersrud v. Hersrud*, 346 N.W.2d 753 (S.D.1984); *Langerman v. Langerman*, 336 N.W.2d 669 (S.D.1983). We cannot say the evidence fails to support the court's findings.

■ Appellants correctly note that they commenced their gravel and road construction business over ten years ago without complaint. This does not, however, render their activity any less a nuisance. A right to maintain a public nuisance cannot be so acquired. *City of Deadwood v. Hursh*, 30 S.D. 450, 138 N.W. 1122 (1912). SDCL 21-10-4 specifically provides that no lapse of time can legalize a public nuisance which amounts to an actual obstruction of a public right.

■ Appellants argue that the remedy invoked was too harsh because the judgment essentially enjoined their entire business operation upon the lots in question. Actually, the court permitted limited business activities such as storing and repairing equipment inside buildings. It also permitted appellants to continue conducting business from their residence office. Even though the injunction against full business activity will likely cause economic damage, that factor is not controlling. Whether a use of property creating an alleged nuisance is reasonable cannot be gauged solely by the necessities of the users. *Johnson v. Drysdale*, 66 S.D. 436, 285 N.W. 301. It was the province of the trial court to enjoin all business activities which caused the nuisance, even though it may result in terminating the present use of the property.

■ A municipality can declare and abate a public nuisance without the aid of, or resorting to, zoning ordinances. SDCL 9-29-13 grants every municipality the ex-

press power "to declare what shall constitute a nuisance and prevent, abate, and remove the same." This statute was enacted in 1890 in essentially the form it now reads. SL 1890, ch. 37, art. V, § 1, subdiv. 60. SDCL 9-29-1 authorizes a municipality to exercise jurisdiction over all territory within one mile of the corporate limits. In *City of Huron v. Bank of Volga*, 8 S.D. 449, 66 N.W. 815 (1896), this court held that a municipal corporation, in the exercise of its powers, may, as here, invoke the aid of a court of equity. It follows that a municipality is empowered to maintain an action to abate a public nuisance within one mile of its corporate borders.

We affirm.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

This appeal stems from a social problem caused by growth, the City of Aberdeen having grown in the ten years preceding trial predominantly towards the north and to an area that is just to the south of the Fairgrounds Road. We see municipal government overprompting judicial intervention into the free enterprise system to such extent that free enterprise is killed. This is a classic case of government, in this case municipal government, moving in on the people's freedoms to such extent that the forces of law are used in an unreasonable manner. Government here wins totally. Free enterprise here loses totally. In reality, a long-established business outside of the corporate limits of Aberdeen, South Dakota, is destroyed under the banner of equity. As the ideological battle should have been tempered with weighing the equities of growth of the City of Aberdeen and the established business of appellants (but was not), I cannot bring myself to entirely join in the majority opinion. As detailed below, I concur in part and dissent in part.

## CONCURRENCE IN PART

By amended judgment under date of April 13, 1983, the trial court entered an injunction enjoining appellants from continuing a nuisance. Of the three specific restraints, I join the majority opinion in affirming subdivision two of the amended judgment which requires appellants to remove all property which appellants had placed on lots not belonging to them and to cease and desist from trespass thereupon. Obviously, appellants have no right, in law, to store any of their personal property on real property which does not belong to them.

## DISSENT IN PART

Subdivision one of the amended judgment orders the abatement of the nuisance "by removing all equipment, machinery, vehicles, lumber, gravel piles, temporary buildings not placed at the time of trial on a permanent foundation, and all other similar property by no later than May 16, 1983." In this regard, appellants' property is zoned A–1 Agricultural. Any form of agriculture, including the raising of crops and animal husbandry, is permitted. All buildings necessary to a farm unit are permissible. Although it appears that appellants used their property for commercial purposes, they cannot be foreclosed absolutely from having *all* equipment, machinery, vehicles, lumber, or gravel piles on land which they own. Such a serious sanction would preclude the parking of a farm tractor, farm machinery, construction machinery, farm vehicles, construction vehicles, new lumber for construction on the property, and gravel to either sell or spread on the driveways. An injunction must be directed against an abatement of a nuisance which exists in fact. Subdivision one of the amended judgment overreaches for it prohibits any type of a lawful business operation, to include an agricultural operation. In *State ex rel. Haugan v. Denis*, 40 S.D. 219, 225, 167 N.W. 151, 153 (1918), we held: "[E]ach case must stand upon its own facts, and that, while ordinarily a public nuisance ... should be abated through the mere prohibition of those things that render [the property] a nuisance ...." I can understand how rubbish, scrap metal, junker cars, and loud noises created by engines without mufflers can constitute a nuisance, but parked "equipment, machinery, vehicles, [stored] lumber, [and] gravel piles" cannot constitute, in themselves, a nuisance in an area such as we have here. In this connection, I wish to point out that appellant Allan Wellman began using this property when he was a carpenter and engaged in carpentry remodeling as a business since 1967. He was apparently successful and then developed, beginning in 1973, the property in question for storage, safekeeping, maintenance, and repair of his road and gravel construction business, equipment, and supplies. He established this property as a place of business wherein he located his office, shop, and construction yard. He and his wife also have their home on a lot adjacent and contiguous to their business. There is not any doubt that appellant Allan Wellman expanded the use of his real property and the amount of equipment used and stored on his property at various times. The trial transcript shows that actual construction is not done on this property and major items of equipment are not stored on this property, full time, but are away from the Aberdeen area on construction jobs. Appellant Allan Wellman apparently stored gravel on and sold gravel from lot four. Appellants' business obviously grew and the City of Aberdeen grew towards appellants' business.

Although this property is known as a subdivision, it is a subdivision of a quarter of rural land. The northern half of this subdivision is totally undeveloped and is overgrown with prairie grass and weeds. The land to the north is an entirely open field which was covered with straw piles, and the lots on both sides of appellants and a neighbor have no housing on them. Approximately 100 feet south of this neighbor's property is an Aberdeen municipal "holding pond." A vacant lot, approximately 100 feet west of this neighbor's property, is covered with weeds. The

neighbors, who do have a home, are appellees, the Thayers. Appellees Katherine Silvernail and Bernadine Velasquez do not reside on their property and apparently suffered no discomfort or injury for there was testimony that they did not intend to sell their property. There is testimony in the record of an old-fashioned neighborhood spat between the Wellmans and the Thayers, to include appellee Thayer spinning his vehicle's wheels thereby throwing mud and gravel up against appellants' vehicles. There is further evidence of appellee Thayer becoming wildacting and excited and threatening physical violence. Appellees Thayers complained of appellants burning garbage so that the fumes drifted onto their property and that employees of appellants and some of their customers walked across onto the Thayer yard and peered into the windows of the Thayer residence. The Thayers also complained of cursing and shouting on appellants' property by appellants' employees and customers.

Under *Greer v. City of Lennox,* as cited in the majority opinion, and addressing subdivision one of the amended judgment, I cannot believe that the trial court's order to remove all of this equipment, etc., is reasonable, for such parking of equipment is neither unreasonable nor does it substantially invade or unreasonably interfere with appellees' use, possession, or enjoyment of the land in the immediate neighborhood. In this regard, the evidence is insufficient to support a finding of a public nuisance and I would hold that it was clearly erroneous and reverse that portion of the amended judgment.

Subdivision three of the amended judgment is a mix of good and bad, in my opinion. Subdivision three restrains appellants from "operating, storing, maintaining or repairing business equipment, business machinery, business vehicles (other than automobiles or light trucks as regularly used to transport the defendants to their place of business) ...." Also prohibited is to have any type of used lumber (except as may be stored inside a building), gravel piles, junk, used wooden pallets (except as may be stored inside a building), open gar-

bage containers, parts for business machinery, vehicles or equipment (except as may be stored inside a building), inoperable vehicles, parts of inoperable vehicles, temporary or moveable buildings not on a permanent foundation, and scrap metal. Further enjoined and restrained is "conducting business activities on any portion of such property (except bookkeeping, accounting and other similar activities such as can be done inside the residence of the defendants) and from any further omissions and commissions" with respect to blocking the approach to a neighbor's property. Lastly, open burning is restrained. Surely, appellants should not be permitted to block their neighbor's drive nor to have open burning; nor should they be permitted to maintain an unsightly junkyard filled with inoperable vehicles, or have open garbage containers and incinerators. These are patently objectionable and constitute a nuisance.

Essentially, this case was tried on this issue: Did appellants' property constitute a public nuisance? If some maintenance and operation constituted a public nuisance, it should have been enjoined; conversely, if there was activity that was totally lawful and not a nuisance, it should not have been enjoined. I fault the intervention of the judiciary, urged on by municipal government, in issuing a blanket proscription of all business activity which could not be contained on the inside of a building. Stripped bare, the injunction comes down to a total abolition and liquidation of a small business which was pioneered in Aberdeen, South Dakota, and grew through the fruits of the free enterprise system. A court of equity should not be so severe. From its bosom, we should be able to fashion remedies which fit the circumstances of the case. See, H. McClintock, *Handbook of the Principles of Equity,* § 29 (2d ed. 1948). In essence, our courts should tailor the remedy to fit the problem and we should abate the nuisance to the best of our ability without totally destroying the business in which the nuisance originates. *City of Hillsdale v. Hillsdale Iron & Metal Co.,* 358 Mich. 377, 100 N.W.2d 467 (1960).

This Court has taken a dim view of prohibiting, by judgment, persons from engaging in a lawful business. *See State ex rel. Haugan v. Belatti*, 38 S.D. 410, 161 N.W. 614 (1917).

Equity. It was borne out of conscience to salve and save. Here, it destroys. With a touch of lesser restrictive sanctions, appellants' business could have lived on and the objectionable activity could have been restrained. *See Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 313 N.W.2d 667 (1981); *Norton Shores v. Carr*, 81 Mich.App. 715, 722–23, 265 N.W.2d 802, 806 (1978). In *Botsch v. Leigh Land Co.*, 195 Neb. 509, 515–18, 239 N.W.2d 481, 486–87 (1976) (citing *Prauner v. Battle Creek Coop. Creamery*, 173 Neb. 412, 113 N.W.2d 518 (1962)), it is stated:

"A court of equity will not usually enjoin the operation of a lawful business without regard to how serious may be the grievance caused thereby. In the first instance, at least, it will require the cause of the grievance to be corrected and will enjoin the conduct of the enterprise perpetually after it has been proven that no application of endeavor, science, or skill can effect a remedy or that the owners cannot be induced to conduct it properly."

There was no written effort by this court of equity to effect an endeavor on the part of appellants, short of a complete shutdown and destruction of their business. The small businesses in America, oftentimes Ma and Pa operations, have contributed manifestly to the well-being of this Nation and its people. Some of these operations ultimately became magnificent industrial empires which produced great wealth and employment. Behind it all was the dream to go forward alone and enhance not only themselves but their families and the comforts of their fellow citizens. Dreams, hands, and hard work establish businesses and businesses fill this country with greatness. I hate to see them die.