The STATE of South Dakota, Acting By and Through the DEPARTMENT OF TRANSPORTATION and the South Dakota Transportation Commission, and Union County, South Dakota, Plaintiffs/Appellees,

v.

Michael P. GARVIN, Defendant/Appellant.

No. 16855.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1990.

Decided June 6, 1990.

Camron Hoseck, Asst. Atty. Gen., Pierre, for plaintiffs/appellees; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Dennis R. Eckert, Elk Point, for defendant/appellant.

WUEST, Chief Justice.

Michael Garvin (Garvin) appeals from a judgment enjoining him from maintaining a junk yard on certain property located in Union County, South Dakota. We affirm.

On June 3, 1965, Garvin purchased a section of property located in Union County, South Dakota. Garvin moved onto the property approximately two months thereafter. Part of the property was subsequently rented out by Garvin to a neighboring farmer. As to the remainder of the property, Garvin intended to use that portion for a salvage business. By April of 1966, Garvin had moved approximately twenty-five to thirty vehicles onto his property.

In the years that followed, Garvin encountered several complaints regarding the use of such property. Most of these complaints came from the Land Use Administrator and concerned violations of county zoning ordinances. Despite these complaints, Garvin made no changes in the manner in which he uses his property. In 1989, the present action was instituted against Garvin by the Department of Transportation (Department). Through this action, the Department sought to enjoin Garvin from maintaining a junk yard on the premises in question. The Department claimed that Garvin's junk yard was not being operated in conformity with SDCL 31–30–3 which provides:

No person shall establish, operate, or maintain a junk yard, any portion of which is within one thousand feet of the nearest edge of the right-of-way of any interstate or primary highway, except the following:

(1) Those which are screened by natural objects, paintings, fences, or other appropriate means so as to be obscured from the main-travel way of the system;

(2) Those located within areas which are zoned for industrial use under authority of law;

(3) Those located within unzoned industrial areas, which areas shall be determined from actual land uses as defined by regulations to be promulgated by the transportation commission;

(4) Those which are not visible from the main-traveled way of the system.

Since Garvin's junk yard did not conform with the requirements of this statute, the Department asserted that such junk yard constituted a public nuisance under SDCL 31–30–1.[1] As a result, the Department argued that according to SDCL 31–30–9, it was entitled to an injunction to abate such nuisance on the premises in question.[2]

In response to the Department's complaint, Garvin filed an answer in which he submitted that the Department was not entitled to its requested injunction for essentially two reasons. First, Garvin sub-

---

1. SDCL 31–30–1 provides in pertinent part:
   The Legislature hereby finds and declares that junk yards which do not conform to the requirements of this chapter are public nuisances.

2. SDCL 31–30–9 provides:

The department of transportation may apply for an injunction to abate any nuisance arising from a violation of the provisions of this chapter, or of rules and regulations promulgated hereunder.

mitted that SDCL ch. 31–30 contains a "grandfather" clause, SDCL 31–30–4, which declares that junk yards in existence on February 14, 1966, are required to be screened, if feasible, by the Department or by the owner.[3] Garvin argued that his junk yard was in existence on February 14, 1966, and thus, pursuant to the "grandfather rights" provided in SDCL 31–30–4, the Department's only remedy against him was to have his junk yard screened. Secondly, Garvin alleged the Department knew he was maintaining a junk yard on the premises in question since 1976, yet it did not institute an action against him for maintaining this junk yard until 1987. As a result of this delay in filing the action, Garvin argued that the Department was barred from obtaining an injunction by the doctrine of laches.

A trial was subsequently held to the court. During this trial, Garvin had the burden of proving he was entitled to the "grandfather rights" provided in SDCL 31–30–4. At the conclusion of the trial, a judgment was rendered in favor of the Department. The trial court found that Garvin failed to establish his junk yard was in existence on February 14, 1966. As a result, the trial court concluded that Garvin failed to establish that he was entitled to the "grandfather rights" provided in SDCL 31–30–4. Since Garvin's junk yard did not fall within the purview of this statute, the trial court determined that such junk yard was being operated in violation of SDCL 31–30–3 and thus was a public nuisance according to SDCL 31–30–1.[4] As a means of abating this nuisance, the trial court entered a judgment which enjoined Garvin from maintaining the junk yard in question. In rendering this judgment, the trial court declared that no lapse of time could legalize a public nuisance, and thus the Department was not estopped from obtaining its requested injunction merely because a number of years had passed before the Department instituted an action against Garvin for operating his junk yard. Garvin now appeals from this judgment, alleging the trial court erred in finding that he failed to prove his junk yard was in existence on February 14, 1966. He also alleges the trial court erred in determining the Department was not barred from obtaining an injunction in this case by the doctrine of laches.

■ We first direct our attention to the issue of whether the trial court erred in finding that Garvin failed to prove his junk yard was in existence on February 14, 1966. Initially, we note that the determination of when Garvin's junk yard was established is significant in this case as SDCL 31–30–4 provides "grandfather rights" to junk yard owners whose junk yards were in existence on February 14, 1966. That is, junk yards in existence on February 14, 1966, fall within the purview of SDCL 31–30–4 and may not be held to violate SDCL 31–30–3. In this regard, we further note that the party who seeks to avail himself of the "grandfather rights" provided by SDCL 31–30–4 has the burden of establishing that his junk yard was in existence on February 14, 1966. *Brown County v. Meidinger*, 271 N.W.2d 15, 18 (S.D.1978). Thus, in the present case, in order for Garvin to have been afforded the "grandfather rights" provided in SDCL 31–30–4, he had to establish that his junk yard was in existence on February 14, 1966.

■ After a presentation of evidence, the trial court specifically found that Garvin failed to establish that the premises in question was being used by him as a junk yard on February 14, 1966. It is well-settled in this state that a trial court's findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity the trial court had to judge the credibility of the witnesses. SDCL 15–6–52(a); *Masek v. Masek*, 89 S.D.

---

3. SDCL 31–30–4 provides in pertinent part:
   Any junk yard lawfully in existence on February 14, 1966, which is within one thousand feet of the nearest edge of the right-of-way and visible from the main-traveled way of any highway on the interstate or primary system, shall be screened, if feasible, by the department of transportation or by the owner[.]

4. At trial, it was undisputed that Garvin's junk yard did not conform with the requirements of SDCL 31–30–3.

62, 66, 228 N.W.2d 334, 336 (S.D.1975); *Brown County v. Meidinger, supra.* Having reviewed the record in the present case, we cannot conclude that this finding of the trial court was clearly erroneous.

On appeal, Garvin points to very little evidence presented to the trial court which indicates that his junk yard was in existence on February 14, 1966. At trial, Garvin presented testimony of three men who said they purchased either engines or automotive parts from Garvin on the premises in question in 1967 and 1968. This evidence establishes very little in the present case since the sales were made approximately one to two years after February 14, 1966. Garvin also presented evidence which indicated that a number of vehicles had been moved onto this property by February of 1966. This evidence, however, does not necessarily indicate that such property was being used as a junk yard at that time since Garvin may have intended to fix and sell such vehicles. Indeed, a Department official testified that in 1976, Garvin told him that he was not going to operate his premises as a junk yard, but rather was going to fix some of the vehicles and sell them. Additionally, we note this Department official testified he examined Garvin's property in 1976 and determined it was not being operated as a junk yard since the vehicles thereon had no missing parts and were not being disassembled. Therefore, even eleven years after Garvin purchased the property in question, it still appeared that such property was not being operated as a junk yard. In light of all this evidence, or lack thereof, we simply are unable to conclude the trial court was clearly erroneous in finding that Garvin failed to establish his junk yard was in existence on February 14, 1966. As a result, we uphold the trial court's determination that Garvin's junk yard did not fall within the purview of SDCL 31–30–4 and was thus being operated in violation of SDCL 31–30–3.

As noted previously, SDCL 31–30–1 declares that junk yards which do not conform to the requirements of SDCL ch. 31–30 are public nuisances. Once it has been determined that a junk yard violates the provisions of SDCL ch. 31–30, thus constituting a public nuisance, the Department of Transportation may apply for an injunction to abate that nuisance. *See,* SDCL 31–30–9. We have previously stated that it is the province of the trial court to enjoin all business activities which cause a nuisance, even though it may result in terminating the present use of the property. *City of Aberdeen v. Wellman,* 352 N.W.2d 204, 206 (S.D.1984). As a result, we conclude that the trial court did not err in granting the Department's request for an injunction in the present case.

Finally, we address Garvin's contention that the Department was estopped from seeking an injunction against him because it knew for over ten years that he was operating a junk yard in violation of SDCL 31–30–3. In *City of Aberdeen v. Wellman, supra,* this Court held that a right to maintain a public nuisance cannot be acquired by maintaining for a substantial time, without complaint, activities giving rise to such a nuisance claim. *Wellman, supra* at 206. In support of this holding, we cited SDCL 21–10–4 which provides that "no lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right." Based upon the same reasoning, we conclude that the lapse of time in the present case does not preclude the Department from obtaining an injunction against Garvin enjoining him from operating his junk yard.

Judgment affirmed.

All the Justices concur.