**Charles P. BUCK, Plaintiff and Appellant (# 17698),**

v.

**David L. OLSON and Ione Olson, Defendants and Appellants (# 17653).**

**Nos. 17653, 17698.**

Supreme Court of South Dakota.

Considered on Briefs April 23, 1992.

Decided June 17, 1992.

Rehearing Denied July 15, 1992.

Thomas F. Martin of McCann, Martin & McCann, Brookings, for plaintiff and appellant.

Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendants and appellants.

PER CURIAM.

David Olson and Ione Olson (hereinafter "Olson") appeal the equitable adjustment in a foreclosure judgment. Charles Buck appeals a judgment dismissing his fraud claim. We affirm in part and reverse and remand in part.

## FACTS

In 1979, Olson hired Tim Thorne of Thorne Construction to construct two six-unit apartment buildings in Brookings. While constructing the first apartment building, Thorne found that support beams running down the center of the foundation of the building were being crushed by the weight of the building. He changed the construction technique on the second building, adding more support beams and more support pillars. He retrofitted more support pillars into the first building to correct the problem. There are no basements under these buildings so the support beams may only be accessed through a crawlspace under the buildings. The support beams are set only a short distance above the ground.

After completion, Olson managed the apartment buildings himself. In the summer of 1986 he called Thorne to fix a sticking door. Thorne entered the crawlspace to try to determine what was causing the door to stick. He did not notice any rotting or sagging of the support beams. Olson did not enter the crawlspace.

In December 1986, real estate broker Ronald Borchardt contacted Olson to see if he wanted to list the two apartment buildings for sale. Olson listed the two apartments involved in this suit along with several other rental properties he owned. Borchardt contacted Buck about the new listings.

Buck was interested in quickly purchasing rental property in order to take advantage of certain tax advantages that would no longer be available after the end of the 1986. His offer to purchase stated that he had inspected the property and would purchase it "as is." Buck's offer to purchase was also conditioned on his satisfaction with the property after a personal inspection prior to closing. Olson accepted Buck's offer.

On the same day he accepted Buck's offer, Olson told Borchardt he did not think the deal would be completed because of cracks and separation between the ceiling and the walls. Olson personally showed Borchardt these problem areas. Olson said he did not know the cause of the problems but told Borchardt about the support problems during construction and explained how Thorne had added additional supports. Olson also told Borchardt that there had been some settling after construction.

Borchardt hired Buell Maberry, a building contractor, to inspect the buildings and try to find the cause of the cracks. Maberry concluded that the cracks were caused by inadequate ventilation in the attic. (Maberry testified that he did not recall going into the crawlspace.) He recommended the installation of additional attic vents and included an estimate for jacking the foundation up. Borchardt called Buck and told him about the cracks and separations and explained that Maberry believed it was a result of inadequate ventilation.

At the time of closing on December 26, 1986, Buck did a walk-through inspection but did not enter the crawlspace. He purchased the property on a $285,000 contract for deed which provided that Buck was obligated to pay real estate taxes and that any failure to do so would constitute a breach of the contract for deed.

Because he did not live in Brookings, he hired Susan Gilley to manage the property for him. In 1988, Gilley hired Buell Maberry to examine a wet floor in the first apartment building. Due to the fact that Brookings had been experiencing several years of above-normal precipitation, Maberry decided the wet floor was caused by excessive moisture in the crawlspace. He recommended the installation of additional vents therein to reduce the moisture level. Gilley hired a masonry contractor to install the vents.

By October 1989, Gilley was again having problems with moisture in the crawl space. Maberry again inspected the crawlspace and discovered that the support beams were rotting and sagging. He recommended installing a new support beam

and vapor barrier. Randy Telkamp, a house mover, also inspected the crawlspace and made the same recommendation.

On May 30, 1990, Buck filed suit against Olson seeking rescission of the contract for deed based on fraud or, alternatively, damages based on fraud. Olson answered, denied any fraud, and counterclaimed for foreclosure for breach of contract because Buck had not paid 1988 and 1989 real estate taxes.

The parties stipulated to try Buck's cause of action first and separately. Buck elected to proceed on his fraud damage theory rather than rescission. Trial was held to the court, with no jury. The trial court ruled that Buck had not proven fraud and thus was not entitled to damages.

Later, Olson moved for summary judgment on his foreclosure counterclaim. Buck, admitting that he failed to pay real property taxes, did not contest Olson's right to foreclose. The trial court, in granting foreclosure, made an equitable adjustment and ordered Olson to pay Buck $17,829. It disallowed Buck's costs for hiring a property manager.

Olson asked the trial court to reconsider its equitable adjustment because it had failed to take into effect Buck's failure to pay $16,273 in real estate taxes. The trial court chose not to recalculate the equitable adjustment and explained that granting a credit to Olson for the real property taxes would only be offset by a corresponding increase in Buck's expenses.

Buck appeals and argues that the trial court erred in finding that Olson had not committed fraud. Olson appeals and argues that the trial court should have calculated the effect of the unpaid real estate taxes in making its equitable adjustment.

## DECISION

WHETHER THE TRIAL COURT WAS CLEARLY ERRONEOUS IN FINDING THAT OLSON HAD NOT COMMITTED FRAUD.

Buck claimed that Olson committed fraud by concealing knowledge about the rotting support beams in the apartment

complex. First, the trial court found that Olson had never represented that the foundation was in good condition. In fact, the trial court found that Olson had informed Buck's realtor that there had been some foundation problems and some settlement during construction. Second, the trial court found that Olson did not know about the defects (the rotting support beams), so obviously he could not have concealed that information from Buck.

The trial court's findings of fact will not be set aside unless clearly erroneous. SDCL 15–6–52(a). *In Interest of A.D.,* 416 N.W.2d 264 (S.D.1987). After carefully reviewing the evidence in this case we conclude that the trial court's findings were not clearly erroneous. This is simply a case of conflicting evidence. The trial court heard the witnesses and was in a position to judge their credibility. SDCL 15–6–52(a). *See Bachand v. Walker,* 455 N.W.2d 851 (S.D.1990); *State by and through DOT v. Garvin,* 456 N.W.2d 779 (S.D.1990). The trial court resolved the conflict in the evidence in Olson's favor. We have considered each of Buck's points and find no grounds on which the trial court could be said to be clearly erroneous.

WHETHER THE TRIAL COURT ERRED IN MAKING THE EQUITABLE ADJUSTMENT OF THE FORECLOSED REAL PROPERTY.

The trial court granted Olson's request for foreclosure but also decided the rights of Olson and Buck should be equitably adjusted. After completing its calculations the trial court decided that Olson owed Buck $17,829.

Olson asked the trial court to recalculate the equitable adjustment because it had not taken into effect Buck's failure to pay real estate taxes for 1988, 1989, and 1990 ($16,273). The trial court chose not to recalculate because it felt the unpaid taxes would have the effect of an offset on the equitable adjustment.

We hold that the trial court erred by failing to account for Buck's nonpayment of the real estate taxes. *See Beitelspacher v. Winther,* 466 N.W.2d 638, 640 (S.D. 1991). Even using the trial court's manner of adjustment, accounting for the unpaid real estate taxes does not result in an offset. In reality, the trial court was giving Buck credit for taxes he did not pay. There is an outstanding tax debt of $16,273 which Olson is obligated to pay. Thus, he has clearly suffered a detriment. We reverse and remand and direct the trial court to modify its equitable adjustment so that the unpaid real property taxes are properly recognized to have been an unpaid obligation of Buck. Buck's equity in the property should ultimately be reduced by the amount of unpaid real property taxes.

We have reviewed the other claimed errors concerning the trial court's treatment of the management expenses and the cleaning and maintenance expenses and find no abuse of its equitable discretion. We affirm that aspect of the trial court's equitable adjustment.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., participating.

WUEST, J., disqualified.